JOSEPH C. STUHLMULLER *v.* MARTHA J. EWING, Executrix, &c.

| 39 | 447 |
|----|-----|
| 72 | 482 |

1. HUSBAND AND WIFE: COMPETENCY OF WIDOW TO TESTIFY ON BEHALF
   OF HER HUSBAND'S ESTATE.—The widow is a competent witness on behalf
   of the estate of her deceased husband, to prove a conversation between her
   husband in his lifetime and the opposing party in relation to the subject-
   matter of the suit.
2. SAME: COMPETENCY OF WIFE TO TESTIFY FOR HER HUSBAND.—The
   incompetency of husband and wife as witnesses for and against each other
   at common law arises, first, from their identity of interest; and, second,
   from principles of public policy. The statute of this State having removed
   the incompetency arising from interest, there remains no legal obstacle to
   the admissibility of the testimony of the wife in favor of the husband where
   it does not embrace confidential communications between them, which are
   excluded on principles of public policy.

ERROR to the Circuit Court of Madison county. Hon. E. G.
Henry, judge.

In the court below the widow of Ewing was admitted to
testify, as stated in the brief of counsel for defendant in error.
The plaintiff objected, and his objection being overruled, he ex-
cepted. Verdict and judgment for defendant, and plaintiff sued
out this writ of error.

*A. P. Hill,* for plaintiff in error.

The question raised by the record is this: Can the wife after
her husband's death be permitted to testify on behalf of his
estate as to matters which transpired during the marriage rela-
tion?—that is, is she competent under the provisions of Rev.
Code, p. 510?

At common law, they were incompetent for or against each
other, partly on account of the identity of their interest, and
partly on a *principle of public policy;* and, even after a dissolu-
tion of the marriage by divorce, they are incompetent at common
law to testify as to any thing which transpired whilst the relation
of husband and wife existed; and this rule was not confined to
confidential communications between them, for it has been well

said that such a limitation of the rule would be difficult of application, and introduce a separate collateral issue as to the character of the transaction or communication. And they were incompetent to testify for or against each other in *civil* or *criminal* cases, except where she was exhibiting peace articles against him, or where the safety of her own person was concerned.

Such being the well-recognized principles of the common law, what change is made by our statute? By Art. 193, husband and wife are made competent in criminal cases, thereby meaning that their competency in civil cases was not intended to be altered by the section in question, for there is no such provision as to civil cases.

In England, under Act of 14 and 15 Vict. ch. 99, passed in 1851, (a statute of evidence similar to ours,) it has been held that the wife was not competent to testify for her husband, on principles of public policy. *Stapleton* v. *Crofts*, 83 Eng. C. L. R. 365, and 18 Adol. & Ell.; and *Alcock* v. *Alcock*, 12 Eng. C. L. R. and Eq. R. 354.

In New York they have a statute identical with ours in its provision that no person shall be excluded by reason of interest; yet held that the wife was incompetent, notwithstanding the Act, her incompetency being placed on grounds of public policy, the statute touching only one ground of exclusion and undertaking to remove that ground only. *Erwin* v. *Smaller*, 2 Sandford, 340, and *Hasbrouck* v. *Vandervoort*, 4' Id. 596.

Our own court has made two decisions on this subject in reference to their competency, when both are living: the first holding them competent; the latter, on full consideration, holding husband and wife incompetent; placing their decision on the true ground, namely, that the statute only removed one ground of exclusion existing at common law, leaving the other ground of public policy still in force, and that this remaining ground rendered each incompetent. The death of the husband does not render the wife competent to testify as to *transactions* that *occurred* during the marriage relation. See 1 Phillips Ev. 78, and *Conner* v. *Marjoribanks*, 4 M. & G. 435.

As our statute has only removed interest as a ground of exclusion, leaving still the other ground of public policy as an

excluding test, all the common law adjudications and authorities apply, and as a widow thus situated is incompetent to testify as to transactions occurring during marriage, previous to the statute, she must be incompetent still. Sound policy requires her future exclusion.

*John Handy,* for defendant in error.

Stuhlmuller sued the estate of Jesse H. Ewing on an account for medical services rendered said Ewing in his last illness.

On the trial, the widow of the defendant was introduced as a witness for defendant, and stated that plaintiff and her deceased husband had a conversation, in her presence, a few days before her husband's death, in relation to said account; in which conversation the deceased said to plaintiff that the contract between plaintiff and the deceased was, that Stuhlmuller was to be paid if he cured him, (Ewing,) and if he did not cure him, he, plaintiff, was to receive nothing; and that plaintiff did not deny or dissent from that statement. Also, that plaintiff did not cure her said husband, but he died a few days after this conversation.

The counsel for plaintiff, in their brief, thus state the question: "Can the wife, after her husband's death, be permitted to testify in behalf of his estate, as to matters which transpired during the marriage relation?"

We think the question would be more properly stated thus: "Can the *widow* be permitted to testify, on behalf of the estate of her deceased husband, *as to an admission* made by the plaintiff, in a conversation *between plaintiff and her husband,* in his lifetime, in her presence, touching the matter in controversy?"

The precise point is not decided by the case of *Dunlap* v. *Hearn,* at October term, 1859, of this court. In that case it was the *wife* testifying for her living husband, about a matter of domestic confidence; in this case it is the *widow* testifying *for* the estate of her deceased husband, not as to communications between wife and husband, but as to an *admission made by another*—the *verbal act* of a third person, in the presence of the husband and wife, and which came to the knowledge of the witness, not by virtue of the confidence of the conjugal relation, but by means equally accessible, ordinarily, to any person not

occupying that relation, and in its character was such as the husband could not have wished to keep in the dark.

I shall argue, first, that even if the testator were alive and the defendant in this action, his wife would have been a competent witness to testify for him as to the facts disclosed in her testimony.

The common law rule of the incapacity of husband and wife to testify for or against each other rested on the grounds, 1st, of the identity of their interest; and 2d, of the policy of marriage.

Greenleaf is wanting in precision in stating the rule; he confounds the two distinct grounds of objection, in the application of them; as if both applied to every case. The rule is more precisely stated by Mr. Starkie, thus: "The husband and wife cannot be witnesses for each other, for their interests are identical; nor against each other, on grounds of public policy." 2 Starkie on Ev. 399.

The rule is defined, in the same way, in Phillips Ev. 77; Peake Ev. 173; by Parker, C. J., in *Fitch* v. *Hill*, 11 Mass. R.: 286; by Tindal, C. J., 4 Mann. & Grang. 435. Now that the disqualification for husband and wife to testify for each other, on the score of interest, has been removed by statute, the only disqualification which remains is, that they shall not testify against each other; because if they were allowed to do so, quarrels and dissensions would ensue between them, which would be against the policy of marriage and of society. And going along with this rule there is another well-established principle that, upon matters spoken or done in confidence between husband and wife, the law forever puts the seal of sanctity, and forbids the wife, even when testifying for the husband, to speak of them; but in reference to matters not confidential, husband and wife may testify *for* each other, and after death of either the survivor may waive the privilege.

If these propositions be true, it follows that where the disability on account of interest is removed, and the matters testified to are not confidential between the husband and wife, nothing remains to disqualify the wife even from testifying *for* her husband. Bishop on Marr. and Div. (enlarged ed. 1859) sec. 673; citing the case of *Marian* v. *Hartford & New Haven*

*R. R.*, 20 Conn. R. 354, in which case the statute (1854, p. 95, sec. 141) having removed the disability arising from interest, and the matters not being of a confidential character, the wife was permitted to testify of them *for* her husband and in support of his claim. So in the same State, where in actions, there termed actions of "book-debt," the statute made all persons interested competent witnesses; the wife in an action of that kind, brought by her husband, was permitted to prove her husband's account: 3 Day, 37. And the same has been held in Vermont, under a similar law: 17 Verm. R. 556, 18 Id. 342. In Massachusetts, in many cases, the question of interest being out of the way, the wife was held competent to testify *for* her husband: 10 Metcalf, 287 ; 10 Pick. 261 ; 12 Id. 39 ; 13 Id. 441. So in Pennsylvania: 2 Harris, 17.

The case of *Dunlap* v. *Hearn*, decided in this court at October term, 1859, and not yet reported except in the newspapers, does not conflict at all with our views, for it is evident from the reasoning of the court in that case that it was decided upon the ground that the testimony of Mrs. Hearn was a disclosure of matters of conjugal confidence. In that case the matters spoken of between Hearn and his wife, and which she was not allowed to disclose, were not spoken in the presence of the other party ; and the *wife*, not the *widow*, was witness.

I will now refer to the cases to which attention is called by counsel for the plaintiff in error. The case of *Stapleton* v. *Crofts*, referred to, I have not been able to find, not being able to procure 83 vol. Eng. C. L. R.

But the case of *Alcock* v. *Alcock*, 12 Eng. C. L. & Eq. R. 354, is not opposed to us, because there the wife was offered as a witness against her husband, and the question was, whether the statute (14 & 15 Vic.) removed the common law disability of the wife to testify against her husband. Our statute removes the disability of interest from all persons, "whether a party to the suit or otherwise ;" but the statute of Victoria removed that disability from "parties to the suit" only. The witness in that case was not a party to the suit, and so, not being embraced within the terms of the enabling law, her disqualification to testify *against*

her husband remained as before the passage of the statute. This is all that case decides.

The case of *Erwin* v. *Smaller*, 2 Sandford, 340, cited by plaintiff's counsel, is not against us; for there the wife was produced to testify *against* the husband, not for him.

But the case of *Hasbrouck* v. *Vandervoort*, 4 Sandford, 596, does seem to be against our view. There the husband was a witness *for his wife*, since the passage of the law of New York removing the disqualification of interest; and his testimony was declared inadmissible. Of this decision I remark that it is but the decision of the Superior Court in New York city, and not a decision of the Supreme Court, or of the Court of Appeals of New York; that it stands alone, so far as my examination goes, and it is directly opposed by the two cases from Connecticut, two from Vermont, the Pennsylvania case, and the case in 10 Metcalf, 287, already referred to. And I further remark that it does not appear, from the report of that case, what the evidence of the husband was; it may be that the witness was called on to disclose matters of a confidential character between wife and husband; but I am free to confess that the court excluded the evidence of the husband on this reasoning, viz.: the law will not allow the wife to testify *against* the husband for fear of disturbing the peace of families, but if the husband can be introduced and examined *for the wife*, he may be subjected to cross-examination, and, by such cross examination, be brought into conflict with his wife and made to testify *against* his wife. This rule is met and overruled expressly, in the case of *Litchfield* v. *Rice*, 10 Metcalf, 287. In that case Judge Wilde says : " Such a result would not necessarily or probably follow; and, as her cross-examination is subject to the supervision and direction of the court, the party will not be permitted, under the guise of a cross-examination, to put questions tending to produce the evil complained of."

It is argued, by the other side of this cause, that as Art. 193 of the 17th section of our Code provides that in " *criminal cases*, husband and wife shall be competent witnesses *for each other*," it is equivalent to saying they shall not be competent in *civil cases* to testify for each other. But this position is manifestly bad.

The preceding Article (190) did not embrace criminal cases; its terms apply only to *civil suits;* and, hence, as the Legislature wished to render the husband and wife competent witnesses *for* each other in *criminal cases,* which before they were not, (2 Kent, 180,) it became necessary to declare their competency in a separate article; which they did. But if criminal cases are included in Art. 190, this court will consider Art. 193 as having been introduced by the Legislature from excessive caution, as was decided in the case of *Alcock* v. *Alcock,* 12 E. C. L. R. 354, cited by Mr. Hill, and not as controlling the meaning of the previous section.

The case of *O'Connor* v. *Marjoribanks,* 4 Mann. & Grang. 435, cited by adverse counsel, will be noticed in another place and connection.

We think the weight of authority and reason is clearly in favor of the competency of husband and wife to testify *for* each other, in civil cases, where the testimony *does not disclose confidential communications between them.*

But, however this may be, it is clear that the only ground of objection to the *wife* as a witness *for* her *husband* that has ever been urged is that taken in *Hasbrouck* v. *Vandervoort,* 4 Sandford, 596, before cited, viz.: that if the wife is admissible as a witness *for* her husband, she may, *by cross-examination,* be brought to testify *against her husband,* and thus the policy which forbids her being introduced as a witness against her husband would be violated, and feuds between husband and wife would ensue. But the reason of this rule (if it be one) and the rule itself cease when the husband is dead, as in the present case; Mrs. Ewing, the witness, was no longer *sub-potestate viri,* and was entirely competent) to testify for her husband's estate, as to any thing which transpired during the coverture, not within the rules protecting the sacredness of confidential communications, as the testimony in this case most clearly was not, as I shall endeavor presently to show. After the testator's death, there certainly was no longer any danger of broils being engendered between him and the witness, by any thing she might testify in this cause. She might then *waive* the protection afforded by the law to matters of confidence between her and her deceased hus-

band, though not before his death will she be permitted to waive it; "so that, if the wife is willing, she may testify in favor of her husband as to whatever happened during the coverture." Bishop on Marr. and Div. (enlarged ed. 1859) sec. 673.

In *Ratliffe* v. *Wales*, 1 Hill, (N. Y.,) 63, where the husband sued in an action of *crim. con.*, the divorced wife was held to be competent to prove the adultery. Bronson, J., says, "the witness was not called on to testify against her former husband," &c.

So in Massachusetts, (*Dickerman* v. *Graves*, 6 Cush. 308,) in a case of the same kind, the same ruling was had, the court placing it upon the ground, amongst others, that she was offered *for* her husband.

In *Jackson* v. *Vandusen*, 5 J. R. 144, the *widow* was permitted to prove a parol division between her *deceased* husband and his brother, although her knowledge of the fact was, in part, derived from the communications of her husband.

These authorities and others to the same effect will be more fully alluded to in connection with the next point I shall argue, which is, that what was detailed in evidence in this cause, by the widow, was, in no sense, such a confidential matter, between her and her husband, as to come within the rule of policy which protects such things. There was no confidence about it. It is not a conversation, between her and the testator, about which she speaks in her evidence. The plaintiff and the deceased converse, in her presence, about the matter involved in this issue. The deceased asserts to plaintiff, in her presence, that the contract between plaintiff and the deceased was, that if plaintiff cured the deceased he was to be paid; if he did not cure him he, plaintiff, was to receive nothing; and this statement of the deceased the plaintiff did not deny, but *admitted* by his silence —*qui tacit, consentive videtur.*" It is, therefore, simply an admission of the plaintiff in this suit that the widow's testimony goes to prove. What if this admission had been made to the wife alone, and not in the presence of the husband? What if it had been made to the wife in the presence of an indifferent party, and not in the husband's presence? There could have been no confidence between husband and wife, in relation to the matter. In its nature it is not confidential; the wife only hears that

which any other person, not occupying her relation, might have heard; her knowledge of it did not, necessarily, arise from her relation to the deceased, but she attained her knowledge of what she testified to by means which might have been accessible to any other person, not occupying her relation to the deceased, who might have been present at the interview between plaintiff and the testator. If a fourth person had been present and heard the conversation, would the fact that the husband and wife were present, have been ground for excluding the testimony of such fourth person, as to what transpired in the presence of all? Clearly not; and if not, where is the rule of policy which will exclude the wife as a witness to the same facts, in favor of the husband? The facts detailed are not confidential, because another party was present; and they were not confidential, because they did not transpire between the husband and wife, but between the husband and another party.

Again, the conversation is not confidential within the meaning and sense of the rule of protection, so as to exclude the widow from testifying, because what transpired in the conversation between plaintiff and the deceased was, in its very nature, something which he could never have desired to conceal but rather to make known.

I will refer the court to authorities in support of these views.

In *Aveson* v. *Kinnaird et al.,* 6 East, (new ed.,) 356, in an action by the husband on a policy on the life of his wife, the declaration of the wife showing herself to have been infirm at the date of the policy was admitted even against the husband, (the wife being dead;) and Lord Ellenborough placed it upon the ground that "no confidence had been violated—nothing extracted from the bosom of the wife which had been confided there by the husband." So in the case at bar nothing has been extracted from the bosom of Mrs. Ewing which had been confided there by her husband.

In 1 Phil. Ev. 81, it is said: "a discourse between husband and wife, in the presence of a third person, may be given in evidence," &c. If a discourse between husband and wife, in the presence of another, may be given in evidence by such third party, it cannot be fairly argued that a discourse between the

husband and another cannot be given in evidence, by the widow, after her husband's death, in favor of his estate. There is no *confidence* in either case.

Greenleaf, (Evidence, sec. 338,) says: "The wife, after the death of her husband, has been held competent to prove facts coming to her knowledge from other sources, and not by means of her situation as wife." And again, same author, sec. 254, says: "She (the wife) may be permitted to testify to facts which came to her knowledge by means equally accessible to any person not standing in that relation." In the present case her knowledge did come from another source than her husband, and not by means of her situation as a wife: it came from the plaintiff, and not, necessarily, by means of her situation as wife, but by means accessible to any other person not occupying that relation who might have been present.

The case of *Ratliffe* v. *Wales*, 1 Hill, 63, above referred to, supports this principle. The wife was permitted in that case to prove the act of adultery in support of an action of *crim. con.* brought by her husband from whom she had been divorced. The court says: "The witness was not called to testify *against* her former husband, nor was she asked to betray any trust or confidence which he had reposed in her during the coverture. The fact which she was offered to prove did not come to her knowledge in consequence of the marriage relation." To same purport is case in 6 Cush. 308, above referred to.

In *Babcock* v. *Booth*, 2 Hill, (N. Y.,) 181, Babcock, as administrator of Barnes, brought suit against Booth for a pair of oxen. The *widow* of Barnes was called as a witness, and objection was made to swearing her; the objection was overruled, and she testified to what she heard said between Booth and her deceased husband about the oxen, and also to observations made *to her* by her husband in regard to them and the contract between her husband and Booth, when, he, Booth, was not present. The court say that "the objection to swearing the witness, when it did not yet appear what she would prove, did not obtain." The court go on to say that in so far as the widow was allowed to testify, in the court below, as to observations made to her, by her husband, about the contract between her husband and Booth,

when Booth was not present, there was error; but that there was no legal objection to the widow's testifying to conversations she had heard between her deceased husband and Booth, in relation to the oxen. And it was put upon the ground that what she testified to was not a matter of confidence between husband and wife, being made in the presence of a third person.

And in the case of *Dunlap* v. *Hearn*, in this court, in which the wife's testimony, as to the declarations of the husband, was excluded, it appears that the adverse party was not present when the conversation between the husband and wife took place, nor was any one else present; and this fact is given prominence by the counsel who argued, in this court, against the admissibility of the wife's testimony. That case is unlike this, however, in this, that there it was the wife testifying, but here it is the widow.

In *Stein* v. *Weidman*, 20 Mo. R. 17, Stein sued Schell, the administrator of Weidman, for work and labor done. The administrator (Schell) had married the widow of the intestate. On the trial the widow of Weidman and wife of his administrator was offered to prove the nature of an agreement between the plaintiff and her former husband. The court held the widow and wife competent to prove the nature of the contract: "it was not," say the court, "matter she learned from her husband exclusively."

It would be difficult to find two cases more analogous to the case before this court than these two cases of *Babcock* v. *Booth*, and *Stein* v. *Weidman*. In both the widow is held to be competent to testify as to conversations between her husband and the adverse party, had in her presence, and affecting her husband's estate.

In *Scroggin & Smith* v. *Holland*, 16 Mo. R. 419, which was a suit against Scroggins & Smith as sureties for one Brown on a note given by Brown for a slave, the *widow* of Brown was admitted to prove the unsoundness of the slave. The court say she was a good witness; "her testimony, if contrary to the expectations of those who produced her as a witness, cannot affect the conjugal state," for that was severed by death; and the court add, that the facts testified to by her were such as she could acquire a knowledge of otherwise than from her husband.

In *Caldwell* v. *Stuart, Exor.*, 2 Bailey, 574, the *widow*, in an action against the executor of her husband, was held competent to prove a parol gift by the husband in his lifetime. Judge Johnson says: "Neither the rule (of exclusion) nor any of the reasons upon which it proceeds have any, the most remote, application here. The husband is no party; he has ceased to have any interest in temporal concerns. The defendant, the executor, represents the interests of the creditors, legatees or distributees, as the case may be; and not the husband. There is no danger of matrimonial discord, nor is there any violation of confidence; she has only disclosed what the husband intended should be known."

This South Carolina case discloses another ground of admissibility of Mrs. Ewing's testimony; she evidently only disclosed by her testimony what her husband must have wished to be known. The admission of Stuhlmuller, going, as it did, to exonerate him (Ewing) from liability, Ewing must have desired should be made known.

Further upon this subject I quote from Bishop on Marr. and Div., sec. 673: "This principle has been carried to the extent of permitting the widow, where the marriage was dissolved by death, to testify to disclosures of her husband, which he could not have wished to conceal, but must have desired to make known through her, if he found no other means of doing so."

To this effect is the case of *Wells* v. *Craig*, 3 Binney, 366, in which the widow was allowed to prove a *donatis causa mortis* by the deceased husband in an action brought by the donee for the gift, against the administrator of her husband. This was upon the ground that no confidence was violated, for, what the widow testified to was what her husband must have desired to make known, and through her, if necessary. She did not testify against her husband, but in agreement with his wishes while living.

In *Hester* v. *Hester*, 4 Dev. 228, on trial of an issue of *devisavit vel non*, the widow was allowed to prove a conversation between herself and her husband, (when no other person was present,) in which her husband had expressed dissatisfaction with the supposed will and that he had thrown it aside. The court says, in reply to objections to this testimony, as follows:

"As for sowing discord, that cannot take place with one that is dead, and distrust will not be created by apprehension of that being made known which there was no wish to conceal." And again: "the rule on the subject of confidential communications is not denied, &c., but the question remains what communications are to be deemed confidential; not those made to the wife to be communicated to others, nor those which the husband makes to the wife as a matter of fact upon which a thing is to operate after his death, when it must be the wish of the husband that the operation should be according to the truth of the fact as established by his declaration. Suppose that the husband were to disclose to the wife that he had given one of their children a horse, can she not, after his death, prove that as against his executors? Suppose, also, that the declaration to which the wife is called had been made to her and another, there is no reason why she, if she will, may not testify to it as well as another. Why? Because it is then apparent that it was not confidential between husband and wife, in the sense of the rule. The same rule also applies where, from the subject of the conversation, it is obvious he did not wish to conceal it, but, on the contrary, must have desired to make it known, and through her, if he found no other means of doing so."

Our case is stronger than any of the cases I have cited, for, in all of them, it was the declaration of the husband that was admitted, when made in the presence of another, and when about a matter he could not have desired to keep hid; but, in our case, what the plaintiff, Stuhlmuller, said to the deceased is the *gravamen* of the testimony, and what the husband said was the mere inducement to the admission which Mrs. Ewing's testimony goes to prove. The conversation, in our case, was not between husband and wife, but between the plaintiff and the husband: they were the actors.

The rule as to competency is also thus laid down in Phil. Ev. note 5th, (ed. 4th of Cowen, Hill, and Edwards:) "The husband being dead, the wife is not incompetent to prove a fact coming to her knowledge by the open declarations of the husband in the presence of other persons;" citing 14 N. H. R. 19, and 3 Rich. Eq. 384.

The strongest case anywhere found in opposition to our view

(if it be in opposition to it) is the case of *O'Connor* v. *Marjori-banks*, 4 Mann. & Grang. 435.    In that case the widow was offered as a witness against the administrator of her husband, to prove a pledge of goods by her with her husband's consent.    We remark, 1st, that she was offered *against* her husband's estate ; 2d, her *interest* was not removed by 14 and 15 Vic., she not being a party to the suit, and that statute only removing the disability of interest from *parties to the suit ;* 3d, it did not appear in that case that the matters disclosed were not confidential; and the decision of the court is, that under these circumstances she could not testify against the estate of her husband.

This case is cited, also, to show that the court will not go into a collateral inquiry as to whether or not the matters to be disclosed were confidential in their character.    The American authorities do not sustain this view ; at all events the reason of the rule could not apply to such a case as the present, where, on the face of evidence as detailed before the court, it is manifestly not confidential in its character.    The case of *Scroggins & Smith*, 16 Mo. R. 419, before quoted from, reviews this case of *O'Connor* v. *Marjoribanks*, and dissents from its reasoning.

We think we have shown that, in this case, the testimony of the wife was not as to matters of confidence between her and her husband.    2d. That if it were, the husband being dead she might waive her protection, so as to testify for her husband's estate. 3d. That there is no rule of law, in this State, which excludes the wife from testifying as to matters which, from their very character and the circumstances attending them, the husband must have wished to have disclosed.    4th. That there is no objection in law to the *wife's* testifying *for* her husband, in his lifetime, as to matters not confidential ; and that, after the death of her husband, the wife may, *a fortiori*, testify for the estate of her husband.

Where the wife is *divorced* from her husband, she cannot waive the privilege of protection to confidential communications, because the privilege is mutual ; and because the policy of the law is against admitting her testimony, on account of bias of mind arising from the divorce or the causes which produced it.    This distinction between the competency of the widow's testimony and that of the divorced wife is stated in Bishop on Marr. and

Div., sec. 673, and in the case of *Caldwell* v. *Stuart, Exor.*, 2 Bail. 574, before referred to.

I make one other point in this case. It will not be denied that if Jesse H. Ewing, the testator, were alive, and this suit was against him, he could testify for himself, as to the facts detailed by his widow. Then the rule, that where the husband could have been a witness for himself the wife shall not be incompetent to testify to the same things, fully applies. 2 Stark Ev. marg. page 401; 8 Paige, 583; and *Mad River & Lake Erie R. R. Co.* v. *Fulton,* 20 Ohio R.

HARRIS, J., delivered the opinion of the court:

The only question for determination here is, whether the wife, *after the death of her husband,* is competent to testify in favor of his estate against a creditor as to conversations between her husband and such creditor in relation to the contract upon which their dealings were based.

By the common law the incompetency of husband and wife on this subject is placed, first, on their identity of rights and interests, and second, on principles of public policy.

In its spirit and extent the rule is analogous to that which excludes confidential communications made by a client to his attorney, and therefore at common law the wife, *after the death of the husband,* has been held competent to prove facts not in their nature confidential, nor coming to her knowledge from the husband by means of the marital relation. See 1 Greenleaf Ev. sec. 338; also *Coffee* v. *Jones,* 13 Pick. 445; *Williams* v. *Baldwin,* 7 Verm. R. 506; *Cornell* v. *Vanartsdalen,* 4 Barr. 364; *Wells* v. *Tucker,* 3 Binney, 366; *Saunders* v. *Hendricks,* 5 Ala. R. 224; *McGuire* v. *Maloney,* 1 B. Monroe, 224; also the numerous authorities collected and reviewed in the very able argument of the counsel for defendant in error.

Our statute, Rev. Code, 510, having removed the incompetency arising from *interest* and her testimony not falling within the class of confidential communications, which, on principles of public policy, are held sacred, there remains no legal obstacle to its admissibility. In the case of *Dunlap et al* v. *Hearn,* 37 Miss. R. 471, these same principles are recognized.

Let the judgment be affirmed.