Cole, adm'r, v. Conolly.

## COLE, ADM'R., *vs.* CONOLLY.

1. A plaintiff in detinue, whose title to the property sued for is legally divested before the trial of the cause, can recover nothing beyond his damages for its detention to the time of such divestiture, and the costs of the suit.

2. A judgment or decree of a court, having jurisdiction of the parties, and the subject matter, however erroneous, until reversed or annulled, is binding upon them as to every question directly decided.

3. Where one, in possession of the property of a third person, surrenders it in obedience to the mandate of a court of competent jurisdiction, issued in a proceeding to which such third person is a party, it is a full defence to a suit brought against him by the latter for the recovery of the property.

Error to the Circuit Court of Dallas. Tried before the Hon. Nathan Cook.

THE facts of this case appear fully in the opinion of the Court.

GEORGE W. GAYLE & JUDGE, for plaintiff:

The verdict is erroneous: 1st, in not assessing the value of the slaves, or any of them—Bell v. Pharr, 7 Ala. 807. 2d. In not allowing damages for the detention up to the trial—Carroll v. Pathkiller, 3 Porter, 280. 3d. In not finding for the plaintiff

for the slaves—he having title, according to the *special* verdict, *at the commencement of the suit,*—Bettis, adm'r v. Taylor, 8 Porter, 564; Bell v. Pharr, et al, 7 Ala. 807. Also, if Coles' title was divested, *in a week after suit was brought,* as found by the jury, the verdict should have been for the slaves. Oden v. Stubblefield, 2 Ala. 684.

2. The judgment is erroneous:—1st, It should have been for the slaves, or their alternate value, when it is for neither. Brown v. Brown, 5 Ala. 508.—2d, A *venire de novo* should have been awarded. 1 Ala. 52.

3. The court below erred—1st, In permitting the record from the U. S. Court to go to the jury. 2d, Cole was neither a *party* or *privy* to any of the proceedings evidenced by it. Blann v. Chambless, 9 Porter, 412.—3d, It was *irrelevant* for the *two* purposes for which it was introduced, viz: First, it could not show that Coles' title was divested by the seizure under the attachment, as detinue *involves the title at the time of suit brought.* Bettis adm'r v. Taylor, 8 Porter, 564—a *legal dispossession* to protect a defendant in detinue must be *before* suit brought, if any will. Caldwell v. Ford, Riley's Rep. 277; Kershaw v. Boyd, 1 Brev. Rep. 301; Lowry v. Houston, 3 Howard's (Miss.) Rep. 304; Lynch v. Thomas, 3 Leigh's Rep. 642; Burnley v. Lambert, 1 Wash. Rep. 308. A dispossession *afterwards,* cannot protect him, or "the death or destruction of the chattel sued for," would do so. Bettis adm'r v. Taylor, 8 Porter, 564; Bell v. Pharr, et al. 7 Ala. 807; White v. Ross, 5 Stew. & Port. 132; Carroll v. Early, 4 Bibb, 270; Gentry v. Barnett, 6 Monroe, 115; Merrett v. Merrett, Martin's (N. C.) Rep. 18; Skipper v. Hargrave, ib. 74. Secondly, It could not show title legally in a third person, or Borland's morgagee, because the *original mortgage is not produced,* nor its absence accounted for, and *because* when the morgagor has possession the legal title (except between the mortgagor and mortgagee) remains in the mortgagor. Morrison v. Gardner. 12 Ala. 547. Thirdly, It was *irrelevant* again, because it produces a conflict of jurisdiction between the State and Federal Courts. Detinue is a proceeding *in rem,* and this suit was brought *before* the attachment issued from the U. S. Court. That it is a *proceeding in rem,* see Clay's Dig. 208 § 37; Lindsey v. Perry, 1 Ala. 203; 4 Am. Com. Law, 324–5; 3 Ala. 747; 7 Ala.

812. The plaintiff's right to *elect* to take the property sued for, or its value, gives him a *lien* upon the property at the commencement of his suit. The *lien* of the plaintiff attaching at the commencement of the suit in detinue, cannot be divested except by a paramount lien: Rives & Owen v. Wilborne, 6 Ala. 45; Kemp, et al. v. Porter, 7 Ala. 138, 53; Hogan v. Lucas, 10 Peters' Rep. 400. Conoly should have filed a bill of interpleader and enjoined the Marshal: 1 Kent's Com. 410: Brown v. Ogden, 6 Halst. 370; Slocum v. Maberry, 3 Wheat. 2; 7 Martin's (La.) Rep. 416.

EVANS & HUNTER, for defendant:

1. The judgment of a court having jurisdiction of the subject matter, is conclusive, between parties and privies until reversed. 1 Greenl. Ev. § 522; ib. § 550, § 531; Warbuton v. Aiken, 1 McLean's Rep. 460; Swaggart v. Harber, 4 Scammon, 364; Lagrange v. Ward, 11 Ohio Rep. 257; Wyman v. Campbell, 6 Porter, 219; Gregnon's lessee v. Astor, 2 How. (U. S.) Rep. 319; Crawford v. Simonton, 7 Porter, 110; Elliot et al. v. Pearsall, et al. 1 Peters, 340; Thompson v. Tolmei, et al. 2 Peters, 163, 169. And this will be the effect, notwithstanding the record may abound with irregularities, which would authorise the reversal of the judgment by a revising court. 10 Peters 449; Wyman v. Campbell, 6 Porter, 219; Williams, et al. v. Armroyd, et al. 7 Cranch, 423; *Ex parte* Watkins, 3 Peters, 193; Skillems' ex'rs v. Mays ex'rs, 6 Cranch, 267; U. States v. Nourse, 9 Peters 8; Swiggart v. Harber, 4 Scammon, 364. The record is absolute verity, to contradict which there can be no averment or evidence; the court having power to make the decree, it can be impeached only by fraud in the party who obtains it. Per Mr. Justice Baldwin in Gregnon's lessee v. Astor, 3 Howard 340—as to jurisdiction vide same case, 341; 6 Peters, 729, and the other authorities cited in other parts of the brief.

2. Independent however, of the decree, which we maintain is of itself conclusive upon the plaintiff Cole, we can well rest our defence confidently upon the writ of attachment and seizure, issued out of the court of the U. States, and under which the slaves were taken from the possession of the defendant. It was regular on its face—it commanded the seizure of the

specific property; it was a full justification to the Marshal in seizing the slaves, and could not be resisted by the defendant, except by force, which the law neither required or permitted. The Governor v. Gibson, 14 Ala. 326. The effect of the seizure was to place the property seized under and within the jurisdiction of the Circuit Court of the United States, and is binding, whether there has been personal service or not. Story's Confl. Laws, 462–3; ib. 496; ib. 440–41; Barrow v. West, 23 Picker. Rep. 270; Holmes v. Remson, 20 Johns. 229; 1 Kent's Com. 410. The defendant here, cannot be responsible for the subsequent irregularities (if any) in the proceedings of the U. S. Court.

3. A defendant in detinue may show that he was dispossessed by legal process after suit was brought. Lynch v. Thomas, 3 Leigh's Rep. 682; The Gov. v. Gibson, 14 Ala. 326.

4. Judgment may be for damages without recovery of the chattel. Bethea v. McClennon, 1 Ired. 523; 2 Bacon's Abr. 316; Steph. Com. 1313.

CHILTON, J.—This was an action of detinue brought by the plaintiff in error against the defendant, to recover sundry slaves named in the pleadings. Upon the trial, the defendant pleaded *non detinet*, with leave to give in evidence any special matter which could be specially pleaded, either *puis darrien continuance* or otherwise, with like leave to the plaintiff in respect to his replication.

The jury returned into court a special verdict, by which they certify that at the time the action was commenced by the plaintiff, he, the said plaintiff, had the title to the slaves sued for, and the right to recover the same, but that about one week after the suit was instituted, the plaintiff's title was divested under, and by virtue of proceedings had in the United States Circuit Court sitting at Mobile. They further find, under the charge of the court, that the defendant unlawfully detained said slaves from the plaintiff, for the space of one week, and assess the damage, by reason of such detention, to the sum of twenty-five dollars; and upon this verdict, the court gave judgment for the plaintiff for the damages so assessed.

From a bill of exceptions, it appears that the plaintiff showed that he was the administrator of Abram Borland, deceased,

and that the said Abram was the owner of the slaves, and had them in possession at the time of his death, which happened in November 1845. Having also proved the value of each slave, the possession of the defendant, and a demand for them before the bringing of the suit, the plaintiff rested.

The defendant then proved that after the death of Borland, one Magee, acting as deputy Marshal for the Southern District of Alabama, took said slaves from the plantation of Borland and left them with the defendant, as the sheriff and jailer of Dallas county, to be kept for him; and that while said slaves were thus in the defendant's possession, this action was brought to recover the same. The slaves having remained a week in the defendant's possession after the commencement of this suit, were taken from him by Robert L. Crawford, then deputy Marshal of the United States for the Southern District of Alabama, and conveyed to the city of Mobile.

The defendant then read in evidence a transcript from the records of the Circuit Court of the U. Ssates for the 5th circuit, from which it appears that on the 9th May 1846, the Bank of the State of Georgia, filed a supplemental and bill of review against the Bank of Darien, John H. Walker and Anne, his wife, Lafayette Borland, Kenan Borland, John M. Cole and John F. Conolly, who are citizens of the State of Alabama, charging among other things, that on the 26th July 1822, the said Abram Borland, made his certain deed of mortgage embracing the property in controversy in this suit, to the plaintiff to secure certain debts then due said plaintiff of $17,664: That in the lifetime of said Abram Borland, proceedings were commenced against him in said Circuit Court for a foreclosure of said mortgage, upon which at the December term, 1842, the said debt was ascertained, but the court failed to make a decree for a sale of said property. The bill then avers the death of Borland, leaving Anne, the wife of Walker, Kenan and Lafayette Borland, his heirs at law, having made a will, appointing John A. Walker his executor: That a bill of revivor was filed against the heirs and executor and the Bank of Darien, which had also taken a mortgage with notice of plaintiff's mortgage, and a final decree was afterwards rendered, by which the debt of the plaintiff was ascertained to have been at that time $18,570 24, and the debt due the Bank

of Darien $9,147 84, and an order of sale was made—first, that the slaves be sold, and secondly, for the sale of the lands, &c. That said bill of revivor was filed under the mistaken impression that Walker had obtained letters testamentary upon the estate of Borland, but complaint had since learned that letters of administration had been granted to the defendant Cole: That defendant, Conolly, sets up claim to indemnity before he will surrender the slaves, &c. The bill prays for an order to the Marshal to seize the slaves upon the ground that they are unsafe in Conolly's possession, and that they be sold in satisfaction of the mortgage in obedience to the order of the court, &c.

The subpœnea appears to have been executed on all the defendants except Cole, the plaintiff in this suit. The Judge of the District Court made a *fiat*, that upon the complainant entering into bond, &c., the Marshal should be commanded to seize the slaves and secure them so as to abide the final decree. Afterwards, they were ordered to be sold, the Marshal having on the 11th May 1846, taken the slaves into his custody, by virtue of an order commanding him to do so, issuing from the said court by virtue of the fiat above mentioned, on the 9th day of May 1846. The slaves were sold the 27th June '46 by the Marshal, and the proceeds broght into court. The bill was taken for confessed as against *all* the defendants, and the cause heard *ex parte*, and a decree rendered, appropriating the fund in satisfaction of the mortgage debt. There was no evidence, that when Magee seized the slaves, he had any warrant for so doing.

The plaintiff objected to the introduction of this record from the Circuit Court, but his objection was overruled, and he excepted. The proof tended to show that the slaves sued for, were taken from Conolly's possession by the Marshal, in virture of the writ of attachment above mentioned. There being no evidence offered to impeach in any way the proceedings evidenced by the transcript, the court charged the jury, that the said record and the facts disclosed therein, were *prima facie* a protection to said defendant from the time the slaves were taken from him by the deputy Marshal, provided they were satified from the proof in the cause, that the slaves were actually taken by said Marshal as stated in said record, and

that the slaves so taken were the same now sued for, and the said John Cole mentioned in the record is the same who now sues as plaintiff, but that although the seizure under such circumstances would protect the defendant from the time it was made, he would be liable for the time he held them before they were seized. The plaintiff asked the court to charge the jury, that if the proceedings and suit in said record set forth, were commenced after the institution of this suit, the said proceedings will constitute no defence for the defendant in this action, under his plea *puis darrien continuance*, nothwithstanding said record be unimpeached by extraneous evidence, and the facts be as therein stated, and they be satisfied of the identity of the slaves and the parties therein named with the parties to this suit, and the slaves now sued for.

The plaintiff also asked for the further charge, to wit, that the record of the suit in the Circuit Court did not show that the plaintiff Cole, had been notified or served with process, and for this reason, the proceedings evidenced by the record were void as to him, and could not in any way affect or prejudice his rights; which charges the Circuit Court refused to give, and the plaintiff now assigns these several matters for error.

The main question, and indeed the only one, which it is necessary to notice in this case, is whether the record of the proceedings and decree had in the Circuit Court of the United States, constitutes a justification for the defendant in surrendering the slaves in controversy to the Marshal, and whether he can avail himself of such defence in this action. For it is very clear that if the seizure by the Marshal of the slaves in suit, amounts to a divestiure of the plaintiff's title, he should not be permitted to recover damages for the detention of the slaves after that period, nor is he entitled to a judgment for the slaves themselves. It is ceartainly true that this court has uniformly decided, that the defendant is not permitted to show the death or destruction of the chattel, pending the suit, in order to avoid a recovery; but these decisions must be limited to the principle decided by them, and do not apply to cases, where the right of the property which the plaintiff had at the time of the institution of the suit ceases pending the controversy, and the property has been delivered over to the true

owner before the trial. For example—if A, hires a slave from B, for the space of one year, and C, pending the term, obtains the possession of the slave, and unlawfully detains him, and A brings his action of detinue, but before the trial, the year expires, and the slave is delivered up by C to B, the owner: in such case, the plaintiff not being entitled to the slave, at the time of trial, can have no judgment for his recovery, but is entitled to the damage, which he has sustained by reason of the unlawful detention.

By the rules of pleading, before the passage of our recent statute upon the subject, the defendant must have availed himself of this matter by plea *puis darrien continuance*, which must also have been accompanied with the cost, and the tender of such damages as had accrued up to the time of filing the plea, and which amounted to a waiver of the pleas previously relied upon.

When it is said that the unlawful detainer at the time the suit is brought is the gist of this action, it must not be understood as asserting that nothing happening after suit brought can affect the plaintiff's right to recover the specific property or its value. The mortgagee after default, is entitled to recover the property, but if after suit brought the mortgagor shall fully pay off and discharge the mortgage debt, it would hardly be contended that the payment would not amount to an answer to the suit, except as to the cost. So if the property has been restored to the plaintiff pending the action, he would be entitled to his damages and cost only.

The doctrine that the defendant shall only be liable in damages for the time that he unlawfully detains the slaves, and may plead a surrender *puis darrien countinuance,* was fully asserted by the court of North Carolina, in Bethea v. McClennon, 1 Iredell, 523; see also Penny v. Davis, 3 B. Monroe, 313, and Glascock v. Hays, 4 Dana, 58–61. It is evident that the defendant would, upon the payment of the recovery, if it should be for the alternate value of the property, only be entitled to the interest which the plaintiff had in the slaves, at the time of the trial, for I understand the legal rule, *solutio pretii emptionis loco habetur*, applies as well in the action of detinue as trover or trespass. If then the plaintiff in this case only had a right to the slaves in controversy for one week,

while the defendant had them in possession, there is no rule of law, as there is certainly no principle of justice, which would authorise a recovery for damages up to the time of trial, or for the value of the slaves. We conclude therefore, that if at the time of trial, the title was not in the plaintiff, he could not have judgment for the slaves, and consequently there was no error, upon this hypothesis in the rendering of the judgment by the court for the damage only. The defendant may show title in a third person at the time of instituting the suit in bar of the action, or that the plaintiff's title ceased, pending the action, in bar of the further prosecution of the suit, except as to the cost and damages. Dozier v. Joice, 8 Port. Rep. 303.

We then turn to the main and only question of difficulty in the cause—the legal effect of the record which was read in evidence.

The plaintiff made out a *prima facie* case, by proving that he had title at the time the action was brought, and that the defendant was then in possession of the slaves sued for. He thus cast upon the defendant, in order to defeat the action, the necessity of showing that he had been deprived of the property by due course of law.

The defendant insists that the record, showing the seizure of the slaves by the Marshal, their sale and the ultimate appropriation of the money arising therefrom to the satisfaction of the mortgage debt, which constituted a lien upon said property, is enough to exonerate him from liability. On the other hand it is contended by Cole, that he was no party to the proceedings under which the property was sold; or rather, that he was never served with process to appear upon said trial, and consequently the judgment should not be binding against him.

It will be borne in mind, that no effort was made on the part of the plaintiff to impeach the judgment in any way, so that the question is not whether the record is conclusive upon the supposed rights of the plaintiff, but whether *prima facie*, it operated a divestiture of title, and thus relieved the defendant from his liability for failing to deliver the slaves.

We have examined with care such authorities as have fallen within our reach, most of which are collected and commented upon in 3 Phil. Ev. 903–915, note 637, and which

were reviewed at some length in Wyman, et al. v. Campbell, et al., 6 Porter's Rep. 219, and have attained the conclusion that the Circuit Court, in the admission of the record as evidence, and in the charges given to the jury, as .well as the charges refused, did not mistake the law.

The plaintiff resided in this State : He was made a party to the proceedings, and although there is no return of the Marshal showing he was personally served with process, still there appears a decree *pro confesso* against him, and also a final decree predicated thereupon. The subject matter of the proceeding, evidenced by the record, as well as Cole the present plaintiff, were within the jurisdiction of the court, the extent of whose jurisdiction being exercised within our own State, we are bound judicially to know. 1 Greenl. Ev. 64, § 6. After the rendition of the final decree, Cole was entitled to his appeal or writ of error to reverse the judgment or decree of the court, to which he would not have been entitled, had he been a stranger to the proceedings. That the decree as against him is irregular and reversible there can be no doubt; but we think it is equally clear, both upon reason and authority, that until reversed, notwithstanding it may abound with errors, it is obligatory upon him. The destinction between void and voidable judgments and decrees, is ably taken in the case of Voorhees v. The Bank of the United States, 10 Peters' 449, by Baldwin J. who says, " the line which separates error in judgment from usurpation of power is very definite, and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record, importing absolute verity, in the other, mere waste paper : There can be no middle character assigned to judicial proceedings which are irreversible for error."

If the decree obtained by the Bank of Georgia in this case, does not *prima facie* operate a divestiture of Cole's title as administrator, then, upon abandoning his suit against the defendant in the case at bar, he could maintain an action for the slaves against the purchasers under the decree; for it is very clear, that if the proceeding is absolutely void as against Cole,

the purchasers of the property can acquire no rights under it which can protect them against his claim. But I apprehend no authority can be found which sanctions such a doctrine. If the court had jurisdiction, the purchaser is not required to go beyond the order authorising the sale. Were the law otherwise, judicial sales would become traps and snares for honest men. Thompson v. Talmis, 2 Peters, 165; Grignon's lessee v. Astor, 2 How. (U. S.) Rep. 342; 2 Peters 169; 11 Mass. Rep. 227; 11 Serg. & Rawle, 429.

The judgment is not void, but erroneous merely, and valid against all persons whose rights are affected by it, be they either parties or privies, until the same shall have been reversed.

But there is another view of this case which is satisfactory to my mind to show that the defendant is protected by this record. He was the mere stakeholder of the slaves when they were taken from his possession by the order of a court of competent jurisdiction, and over which order he had no control. The Marshal was commanded to seize them by the the attachment, and the defendant was bound to yield obedience to the mandate of the court, and was punishable if he did not do so. They were taken from him by the act of the court, it may be by proceeding *inverso ordine*, but the court nevertheless having jurisdiction over the subject matter. The rule is, " when a person does an act by command of one exercising judicial authority, the law will not suppose that he acted with wrong or improper motive, because it was his bounden duty to obey"—Broom's Maxims, 67. It would be unjust and absurd it seems to me, to hold that the law will not excuse a party for doing what it requires to be done, and as in this case, the defendant was deprived of the property by the order of the court of competent jurisdiction in a proceeding to which the plaintiff was a party, and which if erroneous, he has the right to reverse, or have reversed, the defendant should not be held bound for the delivery of the slaves, or for damages for their detention beyond the time they were in his possession.

In either view, we think the Circuit Court correctly instructed the jury as to the effect of the record. Let the judgment be affirmed.