HATCH WHITFIELD *v.* MARGARET WHITFIELD, Adm'x.

1. DETINUE—DESCRIPTION OF THE PROPERTY.—In detinue for personal property, where slaves were described in the declaration, some by their name and age, some by name and complexion, and some by name, age, and complexion, and mules by their color, or by their sex, color, and age ; and other property, as two yoke of oxen, one wagon, six head of cattle, nineteen head of hogs, etc., such description is held to be sufficient.

2. WITNESS—INTEREST—COMPETENCY.—H., the witness, married S., who was the daughter of the defendant H. W., and also the sister of N. W., the deceased husband, and intestate of M. W., the plaintiff in the suit. N. W. left no brother or sister (except the plaintiff), nor descendants. The plaintiff was, therefore, presumptive heir of H. W., the defendant, and heir to her deceased brother, N. W., to the extent of half of his estate. *Held:* That W. H. was competent as a witness for the defendant in the cause. 39 Miss., 447; ib., 471; Greenl. Ev., § 342.

3. DETINUE—TITLE—DIVESTURE OF, AFTER SUIT BROUGHT.—DAMAGES.—Where the plaintiff sued in detinue for a slave, under a right derived from one who held a life

Assigment of errors.

interest in it, but pending the suit such person died, and the plaintiff and defendant and others thereupon became joint owners of the slave, this will constitute a good defense to the action; but it must be pleaded *puis darien continuance.* And a plaintiff in detinue whose title to the property sued for is legally divested after suit brought, and before trial, can recover nothing beyond his damages for detention, to the time of such divestiture, and the costs of suit.

4. SAME.—If the defendant be legally evicted or dispossessed of the property, it is a good defense to the action of detinue. So if the plaintiff sells one of the slaves sued for, after action brought and pending litigation, judgment must be for the defendant as to such slave, it being necessary that the plaintiff should have the right of possession at the time of trial as well as at the commencement of the action.

5. EMANCIPATION AFTER SUIT BROUGHT—DEFENSE.—The plaintiff was divested of title to the slaves by the sovereign authority of the United States, exerted in the emancipation of the slaves, subsequent to the institution of this suit; and the defendant was, by the exercise of the same authority, wholly divested of his possession of the same. The defendant in detinue may show title in a third person at the time of instituting the suit, in bar of the action, or that the plaintiff's title ceased pending the action, except as to costs and damages.

6. MATTER OF DEFENSE—PLEADING—VERDICT—RULE OF DAMAGES—The rule seems to be settled that in detinue the defendant may plead *puis darien continuance,* the destruction of the property named in the declaration; and if the plea be sustained there shall be no assessment of the value of said property in the verdict; and the plaintiff shall have judgment for damages because of the unlawful detention only. If this destruction of the property happened while it was in defendant's possession, and without his fault, no part of this value should be included by the jury in their estimate of damages; but if it resulted from the ill-treatment, fault, or culpable neglect of the defendant, the jury may include such value in their estimate.

7. TIME OF ESTIMATION OF DAMAGES—DEMAND—MEASURE OF DAMAGES.—Damages for the detention of the property sued for may, without proof of a demand, be recovered in the action of detinue, from the commencement of the defendant's unlawful possession. As to the measure of damages, this court refers to the case in 40 Miss., 352, and confirms and adopts the rules therein laid down. The hire of slaves by way of damages may be recovered so long as slavery in fact existed.

Error to the circuit court of Monroe county. BRADFORD, J.

The facts of that case sufficiently appear in the opinion of the court.

The plaintiff in error assigned for error as follows:

1st. The court erred in sustaining the demurrer of defendant in error to the 2d, 3rd, 4th, and 5th pleas of plaintiff in error, and in not extending the demurrer back to the declaration, which is bad for not describing the property with sufficient certainty.

2d. The court erred in allowing the testimony of defendant in error, who was the widow of Needham A. Whitfield, and who was suing for the property as his legal representative, to be introduced to the jury.

3d. It was erroneous to admit W. G. Westbrook to prove the value of the slaves, Barney and his wife Sarah, in 1859, before any proof was made of a demand for them.

4th. The court erred in ruling from the jury the affidavit of plaintiff in error, as to what Wiley Howell would swear, merely because it was alleged by the defendant in error that said Howell was the husband of Susan M. Howell, who was a sister of the husband of the defendant in error, and entitled to half the recovery, without showing that the estate was solvent, in order to establish her interest, and when it appeared in testimony that said Susan M. Howell was also an heir of plaintiff in error. and could not be prejudiced either way.

5th. The court erred in permitting M. H. Stevens to be introduced to prove original matter, after he had been discharged under the rule.

6th. It was error in the court to give the 1st, 2d, 3d, 4th, 6th, 7th, 8th, and 11th charges of defendants in error to the jury.

7th. It was error in the court to refuse the 1st and 2d charges for the plaintiff in error.

8th. The verdict of the jury was defective in not describing the two yokes of oxen, and the two mouse-colored mules, so that they might be known from each other, and in not giving such a description of the milch cows, the five head of yearlings, and the nineteen head of hogs, that they might be known from the rest of the animal creation, and so that the sheriff might be able to return the identical property to the defendant in error, if the court should so adjudge.

9th. The judgment of the court is subject to the same objections as the verdict in those particulars. It also requires the return of certain negroes, therein designated by name, as slaves, which is against the well known laws of the land.

10th. The court erred in refusing the new trial asked by plaintiff in error, on the grounds set forth in his motion.

*M. M. Cummings,* for plaintiff in error.

In actions of detinue, the property should be so described as to distinguish it from other property, so that if the plaintiff recover, the sheriff may be able to identify and return it to him. 1 Chit. Pl., 121 ; ib., 124. The declaration is bad, and the demurrer ought to have been extended back to it. 1 Chit. Pl., 122 ; Rose v. Himely, 4 Cranch, 269, 270 ; Story on Con., § 589 ; ib., 582. The 2d, 3d, and 5th pleas set up in bar, that the slaves, since suit brought, have been emancipated ; the 4th plea, that they had been emancipated before suit, it is insisted, were a good bar to the action so far as the negroes were concerned.

The judgment of the court was for the negroes (designating them by name), " if to be had," but " if not to be had," then for their value, as assessed, etc. The court had no power to render judgment for the specific property, so as to reach the negroes, because they were not then property, and the judgment, so far at least, was necessarily void. The court could not render judgment, simply for the value of the property, for such judgment is, in the alternate, depending upon the judgment for the property itself, and would not have been such as required by law. The gist of this action is the unlawful detainer, and not the unlawful taking. 1 Chit. Pl., 122. The negroes being free, there is no longer an unlawful detainer, and the defendant in error, if she has been injured, must seek redress in some other form of action. Parsons on Contracts, 186.

As to the ruling of the court below, allowing the defendant in error to testify as a witness on the trial of the cause, we shall say but little. See Stuhlmuller v. Ewing, 39 Miss., 447 ; Dunlap v. Heard, 37 Miss., 471 ; 1 Greenl. Ev. (8th ed.), 452, § 337, and cases cited in notes. Her statements of " her knowledge of the facts, that her husband managed and controlled them (negroes), fed and clothed them, and doctored them, as his own, all the time, up to 1861," certainly indicate that this knowledge was obtained by virtue of the marital relation, as were also many other facts to which she swears.

The attention of the court is merely called to the charges of the court. The first charge for the defendant in error was wrong, because it precluded the idea that Hatch Whitfield might legally have obtained the negroes back. The second charge is in direct contravention of the law as laid down in Woods and wife v. Sturdevant et al., 38 Miss., 68. The third charge is objectionable, because it assumes it to have been proved that the property remained several years in the possession of Needham Whitfield, without explanation. The fourth charge is erroneous, because it instructs the jury that, under certain circumstances, they may find for the negroes. The sixth charge is highly objectionable, because it declares the law to be, that the delivery of personal property to a child on, or even after, marriage, is a gift or advancement, and that the mere permitting a negro to go home with a child, after marriage, is a gift. The eighth charge improperly assumes that there was some equivocation in Needham Whitfield's possession of the property. The eleventh instruction erroneously charges upon the weight of the testimony. Needham Whitfield's declarations in disparagement of his own title, were competent evidence for the plaintiff in error, but those in his own favor, are not admissible for the defendant in error. 40 Miss., 369.

We will simply direct the attention of the court to the charges asked for by plaintiff in error, and refused by the court below. With regard to the motion for a new trial, we admit the doctrine that the verdict of a jury will not be disturbed, unless it is manifest, from the whole record, that it is clearly wrong; or, unless misdirection of the court, or other error apparent on the face of the record, may have tended to produce such a verdict. But we insist that the verdict in this case was clearly wrong, and that it will so appear to this court upon a careful view of the testimony and proceedings in the record.

*L. E. Houston & R. Davis*, for defendant in error.

The first error relied on for reversing the judgment, is the

action of the court in sustaining the plaintiff's demurrer to the 1st, 2d, 3d, 4th, and 5th pleas of the defendant below. Some of these set up the defense that the negroes sued for had been emancipated since suit brought; and one of them, the fourth, that the emancipation took place before suit brought. The action of detinue is founded on the unlawful taking of plaintiff's property. If, at the institution of suit, he has it not in possession, he is relieved by showing the fact; but if he holds it wrongfully, he is responsible for it, and risks the loss of its destruction.

We deny that the President's proclamation had the effect to free the negroes any further, at most, than the military power was present to enforce the same; and it is not averred in said fourth plea, that said military power was present to produce that effect. In fact, except to this extent, the government itself did not regard these proclamations as being of any potency to free the slave. The second cause of demurrer to the fifth plea, we contend is well taken. The fifth plea virtually admits the plaintiff's cause of action to be well founded at the time suit was brought, and plaintiff in error will not now be permitted to invoke the action of the general government to relieve him from the consequences of his unlawful acts.

The second ground assigned for error is the action of the court in granting the charges asked for by the plaintiff below. The charge is, " That if the jury believe from the evidence that the defendant, Hatch Whitfield, gave these negroes to his son, Needham Whitfield after marriage, they must find for the plaintiff as to the negroes." We think this was clearly the law, and proper in the case. And so too, with regard to the second instruction. See Falconer v. Holland, 5 S. & M., 698; Henderson v. Dillard, 1 Bay, S. C., 234, 235; Moore's adm'r v. Downy et al., 3 Hen. & Mansf, 132–3; Fatheree v. Fletcher, 31 Miss., 271, note; Woods and wife v. Sturdevant, 38 Miss, 89; Whitfield v. Whitfield, 40 Miss., 352–3, 369.

The third charge is very similar to the above, except that

it adds that the presumption of a gift is strengthened by length of possession. As to the fourth charge, there can be no controversy. The fifth charge embodies the oft repeated principle, that where the trespass or detention of the property is attended by circumstances of malice, fraud, oppression or wilful wrong, the law abandons the rule of mere compensation in a legal sense, and the measure of damages becomes a matter for the consideration of the jury, guided by the evidence before them, and they may give exemplary and punative damages. Whitfield v. Whitfield, 40 Miss., 352, 353 ; ib., 366–7.

The sixth and seventh charges are of the same import, and are fortified by the same authorities. In support of the eighth charge, see Falconer v. Holland, 5 S. & M., 700, 701.

The tenth charge, as will be seen, was called for under the evidence and facts of the case, and was undoubtedly the law. Wheatly v. Abbott, 32 Miss., 343 ; 2 Kent's Com., 438 ; 7 S. & M., 428 ; 1 Ga. (Kelly), 595.

The third cause of error embraces the first and second charges asked by defendant. The first of these, even if its correctness as a legal proposition be admitted, was not proper, because it was not applicable to the facts of the case. There was no question of Needham Whitfield's solvency or insolvency, or of any sale or gift of his property to his father, Hatch Witfield, for the purpose of delaying or defrauding his creditor. The real question was, as to the negroes, whether Hatch had given them to his son, or not, in the first instance. And the same may be said with regard to the other property. The second charge, like the first, is wholly inapplicable to the facts apparent in the case ; and, like that, seems to be based on the idea that the statute of frauds had some applicability to the transaction. But in point of fact, such is not the case. Upon this point see Whitfield v. Whitfield, 40 Miss., 369.

The fourth assignment of error involves the admissibility of the testimony of the widow of Needham Whitfield as a witness in the case. Stuhlmuller v. Ewing, 39 Miss., 447.

And as to the point made under the fifth assignment, see Dearing v. Ford, 13 S. & M., 274; Whitfield v. Whitfield, 40 Miss., 366–8. As to the admissibility or inadmissibility of Wiley Howell as a witness, we refer to 2 Starkie Ev., 399; Phil. Ev., 77; Peake's Ev., 173; Fitch v. Hill, 11 Mass., 286; 4 Mann & Granger, 435. Wiley Howell was the husband of Susan Howell, who was the sister of Needham Whitfield, and daughter of Hatch Whitfield. Needham died leaving a widow, but no children, nor brother nor sister, nor descendants of them, except his sister, wife of said Wiley Howell. Consequently, she was entitled to one-half of his estate. Bishop on Marriage (ed. 1859), 673; Alcock v. Alcock, 12 Eng. Com. Law R., 354; Erwin v. Small, 2 Sanford, 340; Litchfield v. Vandervault, 4 Sanford, 596.

The overruling of the motion for a new trial in the court below, is assigned as the seventh cause for error. The law of this case having been already discussed, it is only necessary to consider whether the testimony in the case sustains the verdict of the jury; and that it does very fully do so, we think is clear beyond a doubt, and will so appear by an examination of the evidence.

Tarbell, J.:

This is an action of detinue, brought by defendant in error in the circuit court of Monroe county, in 1863, to recover a quantity of personal property, together with damages for the detention. This property consisted of slaves, mules, horses, oxen, wagons, cattle and hogs.

The defendant pleaded the general issue, and at the November term, 1864, of the circuit court, the plaintiff recovered a judgment, which was reversed on error in 1866. 40 Miss., 352.

Subsequently, on leave, the defendant filed several additional pleas, setting up the emancipation of slaves, by the federal and state governments, since the institution of the suit.

To these pleas the plaintiff demurred. The court sustained

the demurrer and overruled the pleas.   Another trial, in 1867, resulted in a verdict and judgment for plaintiff.   The objections and exceptions upon this trial were numerous, and upon these the case comes to this court.   Of the many questions presented for our consideration, a few only require adjudication.

1. The first, eighth and ninth causes assigned for error, present the question of sufficiency of the description of the property.

In the declaration, the slaves are described, most of them, by name and age, one by name and complexion, and one by name, age and complexion.   The mules are described by their color.   One animal as a bay mare five years old, while two yoke of oxen, one wagon, six head of cattle, and nineteen hogs are named without other description.

The verdict is for the slaves by name, the mules by their color, one bay mare, two yoke of oxen, separately and with separate values, one ox-wagon, one milch cow, five head of yearlings, at $16 20 each; nineteen hogs, at $8 10.   The judgment follows the verdict in this respect.

From an examination of the authorities, we are of the opinion that the description of the property in this case is sufficient.   1 Chitty Pl., 121–124, 3767; 7 Ala., 189; 2 Starkie's Ev., 494.

2. The second cause assigned for error is that the court erred in permitting the plaintiff (who is the widow of Needham A. Whitfield, and sues as administratrix of his estate) to be examined as a witness in the cause.

She is not incompetent by reason of interest (Rev. Code, 510), nor debarred upon principles of public policy, as the facts testified to by her are not in their nature confidential; nor did they come to her knowledge from her husband by means of their marital relation.   This point is no longer an open one in this state.   *Vide* Stuhlmuller v. Ewing, 39 Miss., 447, and the numerous cases therein cited.

3. The fourth assignment of error alleges that the court erred in rejecting the testimony of Wiley Howell.

The deceased husband of plaintiff was a son of defendant. Susan Howell, wife of the rejected witness, daughter of defendant, and sister of deceased, had been sworn, and testified in behalf of defendant. The deceased died without children. Susan Howell, his sister, was, therefore, his heir, as she was also, being his daughter, heir of defendant. Under such circumstances, was Wiley Howell a competent witness for defendant? Upon the facts as presented in the record, we are of the opinion that Wiley Howell was a competent witness for defendant in this case. 39 Miss., 447; 37 ib., 471; 4 Sandfield, 596; Greenl. Ev., § 342, and cases cited.

4. But the important question for our consideration is presented by the special pleas setting up the emancipation and freedom of the slaves subsequent to the institution of the suit. The question is an interesting one, and the more so, as arising in detinue, which, though a recognized and, in some respects, a familiar form of action, yet, in practice not as commonly employed as trespass, trover or replevin, and the authorities are in conflict on some of its essential peculiarities. Sedgewick, in his recent learned work on damages, spares a few lines only to detinue, and passes to the consideration of replevin, with the remark, that " the action of detinue has, however, fallen into great disuse, and in some of the states of the Union it is abolished by statute."

This, like other actions, has its own distinctive features. Among others, it has been described as " a mixed action, to recover specific goods, or their value if they cannot be had, and also damages for the detention." And it has been said that there is " a marked distinction between the action of detinue and that of trover, though in many cases it is at the option of the plaintiff to bring which he will."

Detinue asserts " a continuing property in the plaintiff, and alleges the wrong to consist in withholding the possession." Trover asserts that " though the goods were once the property of plaintiff, they have been made the goods of the defendant, and complains of the injury caused by the conversion." Detinue has been said to be " the connecting link

between actions upon contract, and for wrongs independently of contract." At first, it was considered "difficult to decide whether it should be classed amongst forms of actions *ex contractu,* or should be ranked with actions *ex delicto ;*" but, "it has come to be considered as an action for tort, the gist of the action not being the breach of a contract, but the wrongful detainer." 1 Chitty's Pl.; Tidd's Pr.; 1 Ired., 523. Another feature of detinue is this, that whereas, in trover, property is vested in the defendant, from the conversion or commencement of the suit for the value; in detinue, property vests in defendant only upon payment of the alternate value assessed by the jury.

To maintain detinue, several requisites are necessary: 1st. The property, in some particular specific chattel, capable of identification and delivery must be vested in the plaintiff. 2d. The plaintiff must have in such chattel the general or special property. 3d. He must have the right to the immediate possession of the goods. 4th. The gist of the action being the wrongful detainer, it lies against any person who has the actual possession of the chattels, as well as against others who have at any time wrongfully detained the goods. It follows that to support his action the plaintiff must prove, first, such title as will draw to it the possession; or second, the right to the immediate possession; and third, the detainer or possession in defendant.

These rules are thus more tersely stated by the early authorities:

"In order to ground an action of detinue, which consists in detaining, four things are necessary: 1st. That the defendant came into possession of the goods; 2d. That the plaintiff have property; 3d. That the goods themselves be of some value; 4th. That they be ascertained in point of identity."

Anciently, detinue was maintainable only when the possession of defendant was originally lawful. It subsequently grew to be the rule, that this action might be sustained when the possession had been tortiously obtained by defendant.

By the ancient common law, it was also essential for the plaintiff to prove the defendant in possession of the chattel at the institution of the suit; but this rule has been likewise changed, and the action may be maintained if the property of the plaintiff has been in the possession of the defendant at any time before suit brought, and within the period prescribed by the statute of limitations. O'Shea et al. v. Towhig, 9 Tex., 336; 1 Bibb, 186.

To defeat in whole, or in part, the plaintiff's action, the general rule is, that " under the plea of *non detinet*, the defendant may give in evidence any matter which shows that he does not detain the plaintiff's goods." Chitty's Pl.; Starkie on Ev. ; Tidd's Pr. The defenses under this plea, however, are confined to matters of defense existing prior to, or at the commencement of the suit, and go to the original right of action only, while matters of defense arising after issue joined must be pleaded *puis darien continuance.* Brown v. Brown. 13 Ala.; 202. In Tanner v. Allison, 3 Dana, 423, which was an action of detinue for a slave, the court held it to be " well settled, that in detinue or trover, the defendant may prove that the plaintiff had no right of property, or of possession at the time of the detention or conversion complained of, but that the entire right was in a stranger." Fontaine v. Phœnix In. Co., 11 Johns., 300; Kennedy v. Strong, 14 ib., 131; Schermerhorn v. Van Valkenburgh, 11 ib., 529; Hoyt v. Gibson, ib., 150; Stratton v. Furniss, 2 Munf. Va., 329; 2 Phillipps Ev., 131; Starkie Ev., 1439, 1503. * * * * * " Were this not the true doctrine of the law, that rule would be false which vests the property in the defendant, on payment of the assessed damages; for no better title than that which the plaintiff had, could be transferred to the defendant by operation of law; and the plaintiff having no title, the defendant could, by paying the damages, acquire none, and therefore were there no other reason, he may defeat the plaintiff's action by proving that he has no right." Glascock v. Hays, 4 Dana, 58, was an action of detinue for a slave, in which the plaintiff had only a life

estate. The court observe, " The true criterion of assessment in detinue, is the value which the plaintiff has a right to recover, and it seems to us, that plaintiff, owning only a life estate, has no legal right to act for, or to bind the person who may be entitled to a vested remainder; and therefore, has no right to recover more than the value of the life estate; or in other words, the value of the right upon which alone, plaintiff has a right to recover a judgment; and which might, by operation of law, be transferred to defendant in consequence of plaintiff's acceptance of the amount assessed and adjudged to plaintiff in lieu of the slave and the use of him during plaintiff's life; * * * * * * if defendant ' had detained the slave of ' plaintiff, plaintiff was entitled to the value of his use during the whole time of the unauthorized detention from plaintiff by defendant." It was held in McCurry v. Cooper, 12 Ala., 826, that, " when the plaintiff's right of recovery is dependent upon title in a third person" (*vide*, 12 Ala., 826, and cases therein cited), it is also a law of this form of action, that the plaintiff may have a judgment for damages for the detention without a judgment for the alternate value. Bac. Ab.; Bouvier's Dic.; 3 Porter, Ala., 279; 4 Dana, 58. Sedgewick on Damages.

As to demand, and whether advisable or necessary, *vide* Ellwick v. Rush, 1 Hay., L. & Eq., 28; Flower v. Glasgow, ib., 141; Lewis v. Williams, ib., 172, and note; Gentry v. McKehee, 5 Dana, 35; Jones v. Greene, 4 Dev. & Bat., 354; ib., 468; 5 Ala., 337; 2 Hay., 286; 1 Bibb, 186; 4 Dana; 31 Ala., 186; 40 Miss., 352.

Waiving a discussion, however, of defenses admissible under the general issue, we proceed to consider what constitutes a defense to the action, in whole, or in part, arising subsequent to the institution of the suit. What matters to be available to defendant, must be pleaded *puis darien continuance*, is discussed at some length in Brown v. Brown, 13 Ala., 208. In that case, the determination of plaintiff's interest in the slave in controversy, pending the action, resulted from the death of a person in whom a life estate was vested,

whereby the respective parties to the suit, plaintiff and others, became joint proprietors of the slave, the plaintiff, at the commencement of his action, claiming and holding under the person having the life estate. The court held the facts to constitute a good defense to the action, but that they must be pleaded *puis darien continuance.*

In Cole, adm'r, v. Conelly, 16 Ala., 271, it was held that a plaintiff in detinue, whose title to the property sued for is legally divested after suit brought and before the trial of the cause, can recover nothing beyond his damages for its detention, to the time of such divestiture, and the costs of the suit.

In Burnly v. Lambert, 1 Wash., 398, the court declared the doctrine, that if the defendant be legally evicted or legally dispossessed of the property, it is a good defense to the action. In Shephard, admr., v. Edwards, 2 Hay., 186, 187, the plaintiff had sold one of the slaves sued for, subsequent to the bringing of the suit, and pending the litigation. The court of last resort directed judgment for the defendant as to the slave sold, and held that the plaintiff must have the right of possession at the time of the trial, as well as at the time of the commencement of the action. The court, in 16 Ala., 277, say, "It is very clear that if the seizure by the marshal, of the slaves in suit, amounts to a divestiture of the plaintiff's title, he should not be permitted to recover damages for the detention of the slaves after that period, nor is he entitled to a judgment for the slaves themselves." *Vide,* also, 5 Dana, 35.

It is declared in 41 Miss., 328, that "every owner of property holds the same subject to such action as the sovereign power of the state may, in the exercise of its ultimate sovereignty, adopt in relation to it."

We are of the opinion that the solution of this case is found in the divestiture of the plaintiff's title to the slaves by the sovereign authority, subsequent to the institution of the suit. Not only was the plaintiff divested of title, but the defendant was legally dispossessed of the property. This conclu-

sion, we think, is founded in reason and justice, and may be sustained upon general principles, independently of adjudicated cases.

Indeed, it is one of the peculiar features of the action of detinue, that when judgment is for the specific property or its alternate value, payment of the value vests title in the defendant, which is defeated where title has passed to third parties, or, as in the case at bar, where title in either party is rendered impossible or illegal by operation of law.

In 16 Ala., 278, it is held, that, " The defendant would, upon the payment of the recovery, only be entitled to the interest which the plaintiff had in the slaves, at the time of the trial; for I understand the legal rules, *solutio preti emptionis loco habitu*, applies as well in the action of detinue as trover or trespass. If then, the plaintiff in this case only had a right to the slaves for one week, while the defendant had them in possession, there is no principle of justice which would authorize a recovery for damage up to the time of trial or for the value of the slaves. We conclude, therefore, that if, at the time of trial, the title was not in the plaintiff, he could not have judgment for the slaves.   *   *   *   The defendant may show title in a third person at the time of instituting the suit in bar of the action, or that the plaintiff's title ceased, pending the action, in bar of the further prosecution of the suit, except as to the cost and damages.   Dozier v. Joice, 8 Porter, 303 ; 11 Wend., 54; 11 Johns.; 14 ib.; 15 ib.

Upon an analogous principle, *vis major*, the cases upon the effect of the death of a slave pending the action of detinue, are conflicting.

Carrel v. Early, 4 Bibb., 270, determined in 1815, holds that " the death of the slave pending the action of detinue, does not defeat the action," yet the court say, " the action cannot be defeated by the destruction of the thing, unless it were under circumstances that would excuse the defendant from being responsible for its value." What "circumstances " would " excuse " the defendant from "responsibility," is not intimated. The only authority cited, is Jones' Law of Bail-

ment. This case was referred to with approval in 6 Mon., 115; 9 B. Mon., 106, which were actions of replevin.

Glascock v. Hays, 4 Dana, 58, was in detinue, and without referring to 4 Bibb., the reasoning is antagonistic to that case. McDowell v. Grey's heirs, 5 J. J. Marshall, was in detinue for a slave, wherein the court, referring to 4 Bibb., and 1 Marshall, say, " The correctness of these decisions might be seriously questioned upon principle, as well as on authority and analogy. * * * * Whenever the impossibility of delivering up the property shall be known by the defendant at the time of the trial, or during that term, he should make the fact known to the court, and thereupon apply for a re-assessment of value, if that made by the verdict be excessive. So far, we would recognize and apply the cases which have been cited in Bibb and Marshall, because, so far, no injustice can result from the rule which they establish, however questionable its intrinsic propriety may be considered. But cases may arise in which the delivery of the property may become impossible, after the expiration of the term, in consequence of death, inevitable loss, or destruction, or otherwise, without the fault of the defendant. In such a case, according to the decisions referred to, there would be no legal means for obtaining relief from an unjust and oppressive verdict."

A similar doctrine is somewhat hesitatingly held in 5 S. & P., 123; 8 Porter, 564, and perhaps in other cases in Alabama, but does not appear to be firmly established as it is based upon 4 Bibb, 270, which is more than questioned by 5 Marsh., 3, and upon 1 Martin, 74, which is overruled by Iredell, 523, a clear and well reasoned case, and upon 1 Gilmer, 341, which, if authority at all, is against the doctrine of 4 Bibb. In 1 Gilmer, 341, the slave died pending the action of the court? held proof of death inadmissible under the plea of non detinet; more than intimating, however, if we understand the reasoning of the judges, whose opinions are given seriatim, that if pleaded puis darien continuance, the fact would have constituted a valid defense to a recovery of the value. The case in fact, however, is only to the effect that, if the death

of a slave, pending an action of detinue, could defeat the action, as it respects the value, the fact of death should be put in issue by a plea *puis darien continuance.* Cole v. Connelly, 16 Ala., 271, thus limits previous decisions in cases of detinue : " It is certainly true that this court has uniformly decided, that the defendant is not permitted to show the death or destruction of the chattel, pending the suit, in order to avoid a recovery, but these decisions must be limited to the principle decided by them, and do not apply to cases where the right of the property which the plaintiff had at the time of the institution of the suit ceases pending the controversy," etc.

In Bethea v. McLennon, 1 Iredell, 524, after a clear and conclusive opinion, wherein the case in Martin 74, is scouted as fabulous, the court say, " After much consideration, our opinion is, that the defendant may be permitted to plead in an action of detinue, as a plea since the last continuance, the death of a slave named in the declaration ; and upon such plea being found true, there is to be no assessment of the value of said slave in the verdict, and the plaintiff shall have judgment for damages only because of the detention ; that when such death has happened while the slave was in defendant's possession, and without his fault, the jury should be instructed not to include any part of the value of the slave in the estimate of damages ; but if it has happened because of ill-treatment or culpable neglect, or after a disposition of the slave by the defendant, that they be instructed that they may include the value in such estimate." This, we believe to be the just and true rule.

The question of damages is also a vital one in this case, and it is presented in several aspects.

1st. At what period in the progress of the suit should the value of the property be estimated—at its commencement, or time of trial ?

2d. From what time may damages for the detention in the nature of hire, etc., be recovered ?

3d. To what date may damages be allowed in the way of hire for the detention of slave property ?

When this case was before our predecessors (40 Miss., 352), the subject of damages in actions of tort was very fully considered, and the views of the court were definitely stated. The rules there laid down constitute the law of this case.

As an original question, we might have inclined to the conclusion that in this form of action the true criterion of damages is the alternate value of the property at the time of the verdict, with damages for the illegal taking and detention, as more in accordance with the peculiar features of detinue. Such is the rule in Kentucky, as per 2 J. J. Marshall, 393; 3 B. Mon., 311; though in 5 S. & P., 123, the value at the commencement of the action was declared the practice in Alabama. The doctrine of 40 Miss., 352, however, is the law of this state, in all actions of tort.

It is the doctrine of some of the cases, and as the rule seems to us to be a just one, and not only not inconsistent, but in consonance with Whitfield v. Whitfield, 40 Miss., we hold that damages for the detention may, without proof of a demand, be recovered in this action from the commencement of the defendant's unlawful possession. *Vide* 31 Ala., 186.

As to the time to which damages in the way of hire for the illegal detention of slave property may be allowed, we remark that the short answer is, so long as slavery in fact continued, not beyond the ordinance of the convention of August, 1865.

Notwithstanding the decision in the case of McMath v. Johnson, 41 Miss., 439, we think the better rule is, that freedom is personal to each particular slave, or perhaps to sections, and to that extent a question of fact in the individual case or as to localities. If portions of the state, prior to the surrender, fell within the federal lines, and freedom thus came permanently to any slave, or slaves, the fact and date of freedom ought to be recognized by the courts upon satisfactory proof, as any other fact is established, though this rule should not be applied to fugitives.

We have reached the following conclusions in this case:

1st. That the plaintiff is not entitled to recover in this

form of action the value of the slave property sued for and subsequently emancipated *pendente lite.* .

2d. That the special pleas substantially disclosed the divestiture of plaintiff's title to the slave property, and the legal dispossession of defendant, proof of which would bar a recovery of the value of such property.

3d. That the plaintiff is entitled to recover damages for the detention of all the property in suit from the time of unlawful taking. In the case of the slaves to their actual, permanent freedom, and as to the other property, to the time of the trial—the case being otherwise made out to the satisfaction of the court and jury.

4th. That the voluntary transfer of possession by sale or otherwise by the defendant, as was the case as to some of the cattle and oxen sued for, is not a bar to the action, and the plaintiff is entitled to recover the alternate value thereof with damages for the detention, being governed by this opinion and the rules as to damages stated in 40 Miss., 352—the case being otherwise satisfactorily established.

The judgment is reversed, and the cause remanded.