STATE OF MINNESOTA *ex rel.* TOWN OF MARINE *vs.* CHARLES H. BROWNE, County Auditor.

Submitted on brief by appellant, argued by respondent, Jan. 9, 1894. Reversed Jan. 19, 1894.

No. 8432.

**Laws 1893, ch. 180, § 1, construed.**

The proviso attached to section 1, ch. 180, Laws 1893, construed as applying to new towns set off from others prior to the passage of the act.

**The Title of the Act held sufficient.**

*Held,* also, that the subject is sufficiently expressed in the title of the act.

**Legislative power to apportion uncollected taxes.**

Also, that the legislature has the power, even after the division of a town, to apportion among its parts uncollected taxes levied before the division.

Appeal by Charles H. Browne, County Auditor of Washington County, from an order of the District Court of said County, *W. C. Williston,* J., made July 28, 1893, directing that a peremptory writ of *mandamus* issue.

Swen Magnuson, town treasurer of the Township of Marine in Washington County, on June 27, 1893, presented to the District Court of that County in behalf of said town his petition stating

that Charles H. Brown, County Auditor of the said county had completed his apportionment of the taxes for the year 1892, collected since the settlement in February, 1893, among the townships of that county, and that $1,044.71 thereof was then due and payable to the Township of Marine, that he had demanded of said Auditor that he credit the petitioner with that sum and issue to him a warrant therefor on the County Treasurer, that the Auditor refused so to do and he prayed that an alternative writ of *mandamus* issue commanding the Auditor to give the credit and issue the warrant, or show cause before the court why he refused.

The alternative writ was granted, issued and served, and on July 11, 1893, the Auditor made answer that the County Commissioners of Washington County on January 5, 1893, pursuant to 1878 G. S. ch. 8, § 114, set off from the Township of Marine a part of its territory and organized the same into a new town called New Scandia and that afterwards on January 30, 1893, they set off another part of its territory and organized it into a new town called May; that each of the new towns elected officers including town treasurers, and that by Laws 1893, ch. 180, the Town of New Scandia was entitled to $320.46 and the Town of May to $418.33 of the money so collected, that the Town of Marine was entitled to only $305.92 thereof which sum he was ready and willing to credit and order paid to petitioner.

Laws 1893, ch. 180, was approved and took effect on April 17, 1893. At the hearing the trial court found that there was collected between that date and June 1, 1893, in the territory embraced in the old Town of Marine $1,044.71 on account of taxes levied in and prior to the year 1892 and ordered a peremptory writ of *mandamus* to issue commanding the Auditor without delay to credit the petitioner with the whole amount thereof and give him a warrant therefor, pursuant to 1878 G. S. ch. 11, § 67. From that order the County Auditor appealed to this Court. The discussion here was upon the construction and meaning of Laws 1893, ch. 180.

*Kueffner, Fauntleroy & Searles,* for appellant.

*A. B. Darelius,* for respondent.

MITCHELL, J. The main contention in this case is as to the construction of Laws 1893, ch. 180, (and particularly of the proviso

in the first section,) entitled "An act to amend section 114, ch. 8, Gen. St. 1878, relating to the powers of county commissioners."

The entire section, before and after amendment, so far as here material, is as follows, the new or amendatory matter being distinguished from the original section by italics:

"Sec. 114. Such board (of county commissioners) shall, in addition to the powers above enumerated, have power to set off, organize and vacate towns and change boundaries thereof in their respective counties. * * * *Such board of county commissioners shall also have power, whenever a town of their county shall be divided, or have any part set off or stricken therefrom, to apportion pro rata according to assessed valuation among the several parts of the town so divided any funds then belonging to such town or to which such town is entitled and not raised or theretofore appropriated for a purpose inconsistent with such apportionment. And said board shall also have power, whenever a town of their county shall be divided or have part stricken therefrom to apportion in like manner, but with due regard for the purpose for which the same shall have been levied, all taxes then levied or assessed for the benefit of the town so divided, and remaining uncollected, and to provide for the payment thereof when collected in pursuance of the apportionment or allotment by them made.* Provided, *that all taxes collected from real and personal property in said newly organized towns after the passage and approval of this act, shall be paid by the county treasurer to the treasurer of such newly organized towns for the use and benefit of such town or towns.*"

Both parties admit (and in this we agree with them) that the provisions of the amendatory act preceding the *proviso* are in all respects prospective, and have reference only to the towns thereafter set off. Plaintiff claims that the *proviso* is also wholly prospective, and only applies to towns set off after the passage of the act.

On the other hand, the defendant, while admitting that it is prospective as to the date of the collection of the taxes, claims that it is retroactive, so as to apply to "new," as distinguished from old or original towns set off before the passage of the amendatory act.

The act is so badly worded that we have been greatly puzzled as

to what it does mean, and are unable to place any construction upon it that is satisfactory to ourselves.

We have not much difficulty in arriving at the conclusion that the words *"after the passage and approval of this act,"* contained in the *proviso,* have reference to the date of the collection of the taxes; but much can be said in favor of the contention of the plaintiff that grammatically the words *"said newly organized towns,"* refer back to the preceding provisions of the amendatory act, and hence, equally with them, apply only to towns set off after the passage of the act. The objection, however, to this construction, is that it renders the so-called *"proviso"* directly repugnant to the main body of the act. The first clause of the act provides for the apportionment of all funds then belonging to the town (funds on hand) among the several parts of the town *pro rata,* according to the assessed valuation, (of property,) except when raised or appropriated for a purpose inconsistent with such apportionment.

The second clause provides for the apportionment, *in like manner,* and subject to the same limitation of taxes already levied or assessed, but not yet collected. The *proviso,* it will be observed, is not a mere provision for the payment to the towns of the taxes when collected, in accordance with the apportionment already provided for, but is an apportionment by the legislature itself, on an entirely different basis from that authorized by the body of the act. Hence, if the body of the act and the *proviso* refer to the same cases and the same class of towns, the repugnancy between the two is perfectly apparent. But it can hardly be presumed that the legislature, after having granted the board of county commissioners power to apportion uncollected taxes on one basis, would in the same act take away this power, and itself make a different apportionment. The so-called *"proviso"* must be construed, if its language will permit, so as to give it an effect consistent with the body of the act. Accurately speaking, a *proviso* merely restrains or modifies the enacting clause, and does not enlarge it. But it is well known that statutes are usually enacted without any regard to technical legal definitions, and hence they must give way to the intent of the legislature, as gathered from an examination of the whole statute. An exception is frequently put in the form of a

*proviso*, and not infrequently what is in form a *proviso* is really an additional enacting clause, and enlarges what precedes.

Now, prior to the passage of this amendatory act, the board of county commissioners had power "to set off, organize and vacate towns and change boundaries thereof," but not to apportion the property of a town among its several parts in case of such division. The result was that the old or original town retained all the property. *City of Winona* v. *School Dist.*, 40 Minn. 13, (41 N. W. 539.) What we may call the body of this amendatory act provided, in all cases of future divisions of towns, for an apportionment on a certain basis, by the board of county commissioners, of all funds on hand, and also of all taxes previously levied, but not yet collected. As to these classes of assets, these provisions were complete, and nothing more was required to be enacted on the subject. There did remain, however, the question as to what, if anything, should be done in the case of divisions of towns made before the passage of the amendatory act. The legislature might naturally conclude that in such cases it was too late to attempt any general apportionment of the assets of the town, at least of funds that had been already collected, and probably expended, by the old town. But there might be, as in the present instance, cases where part of the taxes levied before the division yet remained uncollected. It seems to us probable that it was such cases which the legislature had in mind in enacting the so-called "*proviso*," and that their intention was that in such cases all such taxes collected after the passage of the amendatory act should go to the town in which the property from which they were collected was situated, and thus partially remedy the injustice of allowing the original town to take the whole. The words "*newly organized towns*" (a phrase, be it noted, not found in the body of the amendatory act) can, we think, be held to refer back to the original part of the section, and therefore as meaning merely "*new*" towns, or towns set off, as distinguished from "*old*" towns, or those from which the new were taken; and, as the case of towns set off after the passage of the amendatory act is fully provided for in what precedes, the so-called "*proviso*" must be limited to "*new*" towns set off before the passage of the act. This construction may be somewhat strained, but it is the best that suggests itself to us,

and at least has the merit of giving effect to the *proviso,* and at the same time making it consistent with the previous provisions of the act.

That the legislature had the power to thus apportion these taxes between the parts of the original town, even after its division, is not open to doubt; and we also think that, although not specifically indicated by the title, this is so connected with the subject, and so proper to the full accomplishment of the object expressed, to wit, the amendment of the statute relating to powers of county commissioners, (one of which was the division of towns,) that it is not obnoxious to Article 4, § 27, of the Constitution.

In this case the new towns were set off from the relator and the taxes levied, before the passage of this act, but not collected until afterwards.

It follows that the money in controversy belongs, not to the old town, (the relator,) but to the new towns in which the property is situated from which it was collected.

Order reversed.

(Opinion published 57 N. W. Rep. 659.)

Application for reargument denied January 31, 1894.