## WILLIAM R. BROWN v. H. S. PATTERSON, Appellant.

Division One, December 23, 1909.

1. **WITNESS: Competency: Deceased Party: Privy.** Third parties are competent to testify on behalf of defendant to the admissions of a deceased former owner of the land made while he was in possession of land adjoining that in dispute and which defendant claims under an oral executed agreement with such deceased owner, but defendant himself, or a privy to such contract, or the beneficiary of such contract or admission, cannot testify.

2. **RESTRICTING DEFENSE: Limitations: Estoppel Pleaded.** Where defendant pleaded estoppel, and the facts showed that there was an agreement or understanding about a dividing line and as to the ownership of the strip, and that defendant built a fence and reduced the land to cultivation, with the knowledge of the adjoining owner, who stood by and misled defendant to do acts to his detriment, the court cannot restrict defendant's defenses to the defense of the Statute of Limitations. The defense of estoppel is clearly in the case, and the instructions should not tell the jury that the only question they are to decide is the one of limitations.

3. **WITNESS: Competency: Wife of Deceased Husband.** The widow may testify facts she knows of her own knowledge in a suit between the grantee of her deceased husband and a stranger. She may not only testify to matters of her own knowledge, but to all matters in regard to transactions affecting her husband's interests in which she herself is not interested, unless it involve a disclosure of confidences between the deceased husband and herself.

4. ———: ———: ———: Confidential Relation: Contract in Her Presence. The widow is competent to testify to an agreement concerning land made in her presence between her husband and another party, both deceased, in a subsequent ejectment suit between the respective grantees of each, in which she has no interest. A conversation between her husband and a third party in her presence is not a confidential communication.

5. ———: ———: ———: Statute. The proviso in section 4656, Revised Statutes 1899, "that nothing in this section shall be construed to authorize or permit any married woman, while the relation exists, or subsequently, to testify to any admission or conversation of her husband, whether made to herself or third parties," does not disqualify the wife from testifying as to any matters to which at common law she was competent to testify. It restricts her from testifying to conversations or admissions of her husband, in her presence, only in the three classes of cases in which by the preceding part of the section she is given an additional qualification she did not have at common law. Both at common law and under the statute the widow may testify to an agreement concerning land made in her presence between her husband and a third party, both now deceased, in an ejectment suit between their respective grantees, in which she has no interest.

6. ———: ———: ———: ———: Proviso: Purpose. The purpose of a proviso is not to create new rights, or make new law, or take away old rights existing under the law, or repeal a part of an existing substantive law, but to restrict the preceding portion of the statute of which it forms a part. It is a narrowing of the power or right first given by the same statute. Section 4656, Revised Statutes 1899, was an enabling act, qualifying a wife to testify in the three classes of cases therein mentioned, and the proviso therein, disqualifying her from testifying concerning conversations or admissions of her husband, was a restriction upon her competency to testify as to his admissions or conversations relating to a case belonging to one of those classes, and was not meant to take from her her common law competency.

7. CONTRACT TO SELL LAND: Oral. A verbal contract to sell land is not always void, but specific performance thereof may be enforced upon conditions well established.

Appeal from Pettis Circuit Court.—*Hon. Louis Hoffman,* Judge.

REVERSED AND REMANDED.

*Sangree & Bohling* and *Wm. D. Steele* for appellant.

(1) The court erred in excluding legal evidence offered by the defendant. 1st. The declarations of Harryman, while still in the possession of the plaintiff's forty, to the defendant, as to the boundary line between the two tracts were admissible. Declarations of those in possession of land, in respect to the boundary lines or the extent of their occupation are admissible in evidence as part of the *res gestae.* Brewer v. Brewer, 19 Ala. 481; Norton v. Pettibone, 7 Conn. 319; Davis v. Campbell, 1 Ired. (N. C.) 428; Abeel v. Van Gelder, 36 N. Y. 513; Wynn v. Corey, 48 Mo. 346; Babb v. Ellis, 76 Mo. 459; Long v. McDow, 87 Mo. 197; Bank v. Ragsdale, 171 Mo. 168; Whitaker v. Whitaker, 157 Mo. 342. Our statute concerning witnesses has no application to admission of the deceased person against interest, made to witnesses who are strangers to the contract and otherwise competent to testify. Klofer v. Levi, 33 Mo. App. 322; Martin v. Jones, 59 Mo. 181; Looker v. Davis, 47 Mo. 140; Eyermann v. Piron, 151 Mo. 107. 2nd. The court erred in excluding the deposition of Mrs. Hocker. Smith v. Potter, 27 Vt. 304; Hough v. Blythe, 20 Ind. 24; Elswick v. Com., 13 Bush (Ky.) 155; Ryan v. Follansbee, 47 N. H. 100; Connell v. Vanartsdalen, 4 Pa. St. 364; Powell v. Powell, 114 Ill. 329; Spalding v. Albin, 66 Vt. 148; Scroggin v. Holland, 16 Mo. 422; Funk v. Dillon, 21 Mo. 294; Lynn v. Hockaday, 162 Mo. 111; Shanklin v. McCracken, 140 Mo. 348; Stober v. McCarter, 4 Ohio St. 513; White v. Perry, 14 W. Va. 66; Spivey v. Platon, 29 Ark. 603; Litchfield v. Merritt, 102 Mass. 520; Pratt v. Delavan, 17 Iowa, 307; Stuhmuller v. Ewing, 39 Miss. 447; Griffin v. Smith, 45 Ind. 366; Floyd v. Miller, 61 Ind. 224; French v. Ware, 65 Vt. 338. (2) The court erred in giving erroneous instructions on behalf of the plaintiff.

1st.  The first instruction eliminated the defense of an agreed line, and estoppel raised in the answer, from the consideration of the jury.  Barnes v. Allison, 166 Mo. 103; Seiberling v. Tipton, 113 Mo. 381; Bartlett v. Brown, 121 Mo. 353; Blair v. Smith, 16 Mo. 273; Golterman v. Shiermeyer, 111 Mo. 404; Turner v. Baker, 64 Mo. 218; Lindell v. McLaughlin, 30 Mo. 28; Dolde v. Vodicka, 49 Mo. 98; Rutherford v. Tracy, 48 Mo. 325; Shaffer v. Detie, 191 Mo. 392.  2nd.  The court erred in refusing the defendant's two last instructions.

*Barnett & Barnett* for respondent.

(1)  The court did not err in excluding the conversations between Harryman and the defendant Patterson, as to an alleged agreement fixing the boundary line between said parties, being the boundary line in dispute.  It is attempted to bind the plaintiff by some verbal agreement made with Harryman, he being the plaintiff's grantor and the party under whom the plaintiff claims.  The defendant is not a competent witness to prove such an agreement for the reason that Harryman, the other party to the transaction is dead, and the living party therefore is incompetent to testify as to such transaction.  It is not a question, as appellant's attorneys seem to think, as to whether the declarations of Harryman are admissible, but the question is, is the defendant, being the opposite party to said contract, permitted to testify as to these declarations when Harryman is dead?  The statute clearly excludes him. Sec. 4652, R. S. 1899.  The provisions of this section extend to every occasion in which such contract or cause of action may be involved.  Baker v. Reed, 162 Mo. 341; Warfield v. Hume, 91 Mo. App. 541; Hughes v. Israel, 73 Mo. 538; Chapman v. Dougherty, 87 Mo. 617; Rice v. Shipley, 159 Mo. 399; In re Imboden's Estate, 111 Mo. App. 220; Green Real Estate Co. v. St. Louis Mutual House Building Co., 196 Mo. 358; Miller v. Slupsky, 158 Mo. 643; Johnson v. Johnson,

173 Mo. 91.  (a)  The authorities cited by appellant do not support or tend to support his contention; such authorities only establish the general doctrine that Harryman's declarations are admissible and are not mere hearsay, but do not tend to support the proposition that defendant Patterson is a competent witness to prove such declarations.  On the contrary, such authorities hold, that such declarations may be proved by strangers to the contract, but not by the party to the contract or by a party to the suit who claims under such contract.  (2)  The court did not err in excluding the deposition of Mrs. Hocker who was the wife of Louis Brummett, one of the parties to the alleged contract about which Mrs. Hocker testifies in her deposition and the party under whom the defendant Patterson claims.  This witness is in the same position as though Mr. Brummett was defendant instead of Mr. Patterson, his grantee, and his wife is not a competent witness.  The proviso to Sec. 4656, R. S. 1899, was intended to apply to admissions and conversations in all cases, whether the husband was a party or not, and clearly excludes Mrs. Hocker, who was the wife of Brummett.  The conversation to which she testifies related to the alleged contract between her husband and Harryman, in which she claims to have been present with her husband.  Moore v. Wingate, 53 Mo. 398; Holman v. Bachus, 73 Mo. 49; Waddle v. McWilliams, 21 Mo. App. 298; Johnson v. Quarles, 46 Mo. 423; Johnson v. Burkes, 103 Mo. App. 227.  (3)  The court did not err in giving instruction 1 on behalf of the plaintiff.  There was not one particle of evidence in the case supporting the defense pleaded to the effect that the said boundary line had been established by an agreement.  If such evidence had been admitted, still the instruction would have been proper because there is no question of a disputed boundary in this case.  It is admitted that plaintiff has the paper title to the strip in question and that the boundary line is where we claim

it to be, independent of any agreement. Reynolds v. Hood, 209 Mo. 619; Turner v. Baker, 64 Mo. 240; Acton v. Dooley, 74 Mo. 68; Barnes v. Allison, 166 Mo. 105.

GRAVES, J.—Action in ejectment for two and one-half acres of land in Pettis county. Petition in usual form, placing ouster as of April 1st, 1903, and alleging damages in the sum of $100. The answer pleaded (1) general denial, (2) estoppel and (3) the ten-year Statute of Limitations. Reply was general denial. A trial before a jury resulted. in a verdict for plaintiff for possession together with damages in the sum of one dollar.

"Whereupon it is ordered, adjudged and decreed by the court that the plaintiff have and recover of the defendant the possession of the real estate described in the petition as follows, to-wit: two and one-half acres off of the north side of the northwest quarter of the southwest quarter of section 19, township 48, range 20, being a strip of land of uniform width, and its length east and west being the distance across said quarter of said quarter section in Pettis county, Missouri. And that plaintiff have and recover of the defendant the sum of one dollar for his damages, together with the costs of this suit.

"It is ordered and adjudged that the plaintiff have a writ of possession commanding the sheriff to deliver to plaintiff the possession of said premises and commanding him to levy and collect the said damages and costs from defendant."

From such judgment the defendant, after unsuccessful motion for new trial, in due form appealed to this court.

George Harryman was the admitted common source of title. The strip in dispute is fully shown by the following plat introduced in evidence:

## PLAT

In other words, the land in dispute is about two and one-half acres off of the north side of the northwest quarter of the southwest quarter of section 19, township 48, range 20, in Pettis county, Missouri.

In 1884, George S. Harryman was the owner of both tracts of land. That is to say, he owned the tract marked on the plat as belonging to the plaintiff, as well as the tract marked on the plat as belonging to the defendant, both in said section 19, aforesaid. It will be noticed from the plat there is a jog in the lines of the land lying respectively east and west of the range line. This jog is seventy-six feet. In 1884, one Lewis Brummett owned the land indicated as being in his name on the plat above. On May 2, 1884, Brummett bought from Harryman the land now claimed by Patterson. Brummett's land was in the one range and the land to be bought in the other was the jog of seventy-six feet. It is alleged and attempted to be proven that, when Brummett bought the land now claimed by Patterson, it was agreed that the south line thereof should be an extension toward the east of the south line of the land owned by Brummett in range 21, which of course was seventy-six feet south of the real line of the land in range 20. However, the deed from Harryman and wife described the southwest quarter of the northwest quarter of section nineteen, township 48, range 20. Brummett immediately took possession, not only of the part described in the deed, but the strip in dispute as well. It also appears that under this oral agreement Brummett was to give fifteen feet off of the south side of the strip for a road, and Harryman, his grantor, was to give a like strip off of the remaining portion of his land to the south thereof. This agreement seems to have been executed, for it appears that at least partial fences were erected for this road and the same was used as a road.

Brummett's title passed to defendant Patterson, and Harryman's title through *mesne* conveyances

passed to the plaintiff Brown in 1901. It also appears
that none of the *mesne* conveyancers actually claimed
the strip in dispute, although by deed they conveyed it.
The questions now urged involve the admissibility of
certain excluded evidence and the giving and refusing
of certain instructions, which can be better noticed in
the course of the opinion.

I. Whilst Harryman was yet in the possession of
the forty acres now owned by Brown, it is alleged he
had a conversation with Patterson, the defendant, in
which he stated to Patterson where the south boundary
line of the forty now owned by Patterson was, and
this declaration of the party in possession was ex-
cluded by the court, in so far as the witness Patterson
is concerned. Admissions made by Harryman to other
witnesses and also a letter from Harryman, indicating
the line was where defendant now claims it to be and
that such line had been previously agreed upon and
the strip of two and one-half acres sold to Brummett,
at the date of the deed, was admitted. It is not dispu-
ted by the learned counsel for plaintiff that the admis-
sions of a party in possession can be proved in so far
as such admissions tend to show his claims or disclaims,
or in other words, in so far as they go to the extent
and character of the title under which he holds posses-
sion. Neither do they deny that such admissions, if
made to third persons, may be used as against the
subsequent purchasers of the property claimed under
the person making such admissions. The defendant
by proper questions tried to prove these admissions
by the defendant himself, over and above certain admis-
sions proved by third parties. This proof the court
excluded.

We are of opinion that the court was correct in ex-
cluding the testimony of Patterson upon this point, it
being shown that Harryman was dead at date of trial.
This construction given to section 4652, Revised Stat-

utes 1899, by the court, bears out the judgment of the court below. Patterson was a subsequent grantee from Brummett. Brummett and Harryman were the contract-makers. Patterson was a party to the suit and was holding under the alleged agreement previously had with Harryman and Brummett. Section 4652, *supra*, closed his lips upon the death of Harryman. Patterson was not a stranger to the alleged contract with Brummett. He was Brummett's subsequent grantee and assignee of Brummett's claims against Harryman, which claim of Brummett was the question at issue and on trial, although then held by Patterson.

The statute mentioned disqualified Patterson, and as the trial court admitted other admissions of Harryman, whilst he was in possession, from witnesses who were third persons, in this regard the court could not have been expected to go further. In other words, whilst the third parties were competent to testify to the admissions of Harryman, whilst in possession of the land south of that now owned by defendant, it does not follow that a privy to such contract, or the beneficiary of such contract or admission can testify when it is shown that the opposing party is dead. The cases cited by defendant are easily distinguished upon principle. The statute itself is too familiar to the bar of the State to require reproduction here. This contention of the defendant will be ruled against him.

II. Defendant claims that there is flagrant error in the first instruction given in behalf of the plaintiff. The instruction reads:

"The court instructs the jury that under the undisputed evidence in this case, the plaintiff is the owner of the strip of land in controversy, unless the defendant has acquired the right to the same by virtue of the Statute of Limitations as defined in the other instructions, therefore your verdict must be for the plaintiff unless you believe from the evidence that the defendant

has established his defense, that he is entitled to hold said land by virtue of the Statute of Limitations as hereinafter defined."

It will be noticed that this instruction limits the defendant to the one defense of the Statute of Limitations. It undertakes to and does fix the issue to be tried before the jury. One paragraph of the answer pleads estoppel. It pleads valuable improvements had been made upon the land with the knowledge and consent of plaintiff's grantor, and for that reason the plaintiff was estopped now to claim the land. The evidence upon this point tends to show that immediately after Brummett got the land from Harryman, he began clearing the land and fencing it. That this was done with the knowledge of Harryman. The evidence as to the acts of the parties strongly tends to show some agreement - or understanding about this line. That Patterson completed the fence and as we take it from the evidence reduced the land to cultivation. All this was done with the knowledge of Harryman, or his immediate grantees of the Brown tract. The evidence shows that Harryman started to build a fence on the south of Brummett's fence some thirty feet and that Brummett cut out the fence row and a part of the intended road. It would seem that the land was rough land.

The answer as said contained a plea of estoppel. Under this evidence the question of estoppel was in this case, and the court erred in giving this instruction one for plaintiff, which limited the defense of defendant to that of the Statute of Limitations alone.

Going a step further upon the question of estoppel, the plaintiff's counsel claimed that there was no disputed boundary line, because both Brummett and Harryman knew the true line, and therefore there was no occasion for an agreed boundary line, and no proof in the record of such an agreement. Grant this to be true and the evidence tends to show that Harryman

did know the true line, but there is evidence in the record showing that Harryman said that this strip had been sold to Brummett. There is proof that Harryman lived there for several years after Patterson purchased, and that he must have known and did know of these improvements. Harryman therefore stood by and misled Brummett and Patterson to do acts to their detriment, i. e., to fence and reduce to cultivation this land. Had both Brummett and Harryman been ignorant of the true line, but acting upon what they supposed to be the true line, these acts of Brummett and Patterson would not constitute estoppel, but where Harryman is shown to have said that he sold the land to Brummett and evidently knew the true line and then stood by and permitted valuable improvements to be made, and he himself participated therein by building his own fence thirty feet south of the one being built by Brummett, the question of estoppel comes in the case. In such case there would be the wilful misleading of one party by the other to the detriment of such party doing the acts of improvement.

In discussing a very similar case, wherein we held that there was no estoppel by reason of the land being reduced to cultivation and fenced under the facts of that case, Foard v. McAnnelly, 215 Mo. 371, we took occasion to further say: "It must be borne in mind that we are dealing now with the question of estoppel, and that too in the absence of an agreed line. If the evidence had disclosed a division line agreed upon by the parties, and in addition, the doing of some act by one of the parties, in pursuance of such agreement and understanding, which act was induced by the conduct as expressed in the agreement, and which act was detrimental to the party, then we can see elements of estoppel *in pais;* but, on the other hand, if the building of the fence, the plowing and cultivation of the ground, and the continuous use and possession thereof, which are the acts involved here, were superinduced

by the mistaken view, entertained by both parties, that the supposed line was the true line—and we repeat without it being an agreed line—then, under our holdings, we see no elements of estoppel *in pais*. In such case there is no wilful misleading of one party by the other to his detriment. If the plaintiff had, as a matter of fact, known the true line, and by either acts or words so conducted himself as to have misled Meador, to his detriment, then a different question would be here." The case at bar comes within the latter clause of the quotation above made.

The trial court refused an instruction upon estoppel asked by the defendant, and whilst the form of the instruction may not fully measure up to the law, yet he had already cut out the entire question by this instruction numbered 1 for plaintiff, and defendant's instruction is at least sufficient to show that he was pressing that defense. For the error in giving instruction numbered 1 for plaintiff the case must be reversed and remanded, and in view of these facts, another question as to the admissibility of evidence should be passed upon, which we will do in the next paragraph.

III. A deposition of the wife of Brummett was offered in evidence by the defendant. Brummett had been dead for some years and his wife had remarried to a Mr. Hocker, and lived at the date of the trial in California. In this deposition, she testifies to many things, some important and some unimportant, which were of her own individual knowledge. In the deposition she testifies to an agreement between Harryman and her husband as to where the south line of the present Patterson tract should be, as well as to an agreement as to a road that was to be made between Harryman and her husband, who was then purchasing the Patterson land. She testifies to the character of the land at that time. She testifies as to what her husband

did in the way of improving the land by fencing and clearing out a fence row.

This question necessarily divides itself into two parts, (1) as to things which the wife knew of her own knowledge and without talk with her husband, and (2) the conversation heard by her and had by her husband and Harryman.

(a). At the common law, the wife was not disqualified from testifying in a suit between strangers. [1 Greenleaf Ev. (16 Ed.), secs. 341-2.] As to facts which she knew of her own knowledge, and there are some such facts in this deposition, there can be no question as to her right to testify. In case of Shanklin v. Mc-Cracken, 140 Mo. l. c. 358, this court, *in banc,* said: ''The evidence offered in this case clearly does not come within the rule of exclusion laid down in any of these cases. The evidence offered was simply an act of the husband unconnected with any 'admission or conversation' with him, a knowledge of which the witness derived not from her husband, but from the exercise of her own sense of sight, and we think the court committed error in rejecting it.'' The evidence referred to was the proffered testimony of the widow as to the act of the delivery of a deed to her deceased husband. Other cases are to the effect that the widow can testify to matters of her own knowledge. [1 Greenleaf on Ev. (16 Ed.), sec. 254; Cornell v. Vanartsdalen, 4 Pa. St. l. c. 374; Ryan v. Follansbee, 47 N. H. l. c. 101; Elswick v. Commonwealth, 76 Ky. l. c. 157; Smith v. Potter, 27 Vt. l. c. 308; White v. Perry, 14 W. Va. l. c. 80.] Many cases could be cited, but these suffice.

In Smith v. Potter, cited above, Chief-Justice RED-FIELD of the Vermont court said: ''But where the husband has deceased, it has long been settled that the widow may testify to matters of her own knowledge, and indeed to all matters in regard to any transaction affecting her husband's interest, unless it involve the disclosure of matters of confidence between the hus-

band and wife, or to transactions affecting the charac-
ter of the husband, unless she is herself interested in
favor of the testimony given.    This was expressly de-
cided in Edgell v. Bennett, 7 Vt. 534.    And this was be-
fore the rule of the English courts, and has long been
practiced upon, in this State, at the jury trials.    The
statute having removed all objections, on account of
interest, it becomes an inquiry merely, whether the
testimony is objectionable as containing matters of con-
fidence, or tending to discredit the husband.    The depo-
sition in question does not seem to be of this character,
and, if relevant to the issue, was, we think admissible.''

There was evident error in excluding the deposi-
tion of Mrs. Hocker as a whole, and for this error the
cause should be remanded for a new trial.

(b).    But going to the more vital question and the
one which should be passed upon in order to enlighten
the court in the new trial, i. e., should Mrs. Hocker be
permitted to testify as to any contract or agreement
made between Harryman and her deceased husband,
Brummett, in her presence?

Death has sealed the lips of both actors.    Brum-
mett's interest in this agreement long since passed to
Patterson, at least in a way.    Harryman's views of
the contract or agreement and his interest therein,
have in a way passed to Brown.    Now can Brummett's
widow declare to the world this contract?    The pres-
ent action, so far as the widow is concerned, is between
strangers.    In such case, she was at common law enti-
tled to testify.    The common-law rule has well been
stated by Greenleaf.    [1 Greenleaf Ev. (16 Ed.), secs.
333c, 334 and 335.]    In section 333c, *supra,* it is said:
''Testimony by a husband or wife may involve any
one or more of three distinct and independent prin-
ciples, not always kept separate by authors and judges:
(1) One spouse may not testify for the other; (2) One
spouse may not testify against the other; (3) One
spouse may not testify to confidential communications

by the other. The first rests on the notion of interest, *i. e.* the untrustworthiness of one spouse as likely to favor the other by testifying falsely on the other's behalf. The second rests on a notion of policy or sentiment, that it is a hardship to the one to be condemned by the testimony of the other, and that the allowance of such a practice would tend to disturb marital harmony. The third rests on a public policy similar to that which protects confidential communications between attorney and client, government and informer, and certain other classes of persons; the thought being that the full activity and benefit of the relation cannot be attained unless the persons in it have full security in advance that their confidences cannot be disclosed.''

The evidence offered in this deposition as to the contract falls under the ban of neither of the three principles announced by the author, nor under the reasons for the three principles. For in the case at bar the surviving spouse is neither testifying for or against her husband, nor is she testifying to confidential communications between husband and wife. Confidential communications between husband and wife usually fall under the ban of secrecy, notwithstanding the relationship has ceased either by divorce or death. But the evidence here is not in the nature of confidential communications between husband and wife. There can be no such character of conversation in the presence of a third party. But further, this is not a conversation between husband and wife, but a conversation between the husband and a third party in the presence of the wife. Leaving out for the present the consideration of our statute which we will consider in another paragraph, we are of opinion that the testimony of this woman was competent on the matter of the agreement.

In addition to the authorities cited and discussed *supra,* the following additional cases lend support to these views: McGuire v. Maloney, 1 B. Mon. 224;

Spivey v. Platon, 29 Ark. 1. c. 608; Litchfield v. Merritt, 102 Mass. 1. c. 524; Pratt v. Delavan, 17 Iowa 1. c. 309; Stuhlmuller v. Ewing, 39 Miss. 447; French v. Ware, 65 Vt. 338.

IV.   But in arguing that this testimony of the widow is incompetent the plaintiff plants himself behind a proviso, at the end of section 4656, Revised Statutes 1899.

The section in full reads: "No married woman shall be disqualified as a witness in any civil suit or proceeding prosecuted in the name of or against her husband, whether joined or not with her husband as a party, in the following cases, to-wit:   First, in actions upon policies of insurance of property, so far as relates to the amount and value of the property alleged to be injured or destroyed; second, in actions against carriers, so far as relates to the loss of property and the amount and value thereof; third, in all matters of business transactions when the transaction was had and conducted by such married woman as the agent of her husband; and no married man shall be disqualified as a witness in any such civil suit or proceeding prosecuted in the name of or against his wife, whether he be joined with her or not as a party, when such suit or proceeding is based upon, grows out of, or is connected with any matter of business or business transaction where the transaction or business was had with or was conducted by such married man as the agent of his wife: *Provided,* that nothing in this section shall be construed to authorize or permit any married woman, while the relation exists, or subsequently, to testify to any admission or conversations of her husband, whether made to herself or to third parties."

As said by HENRY, J., in Holman v. Bachus, 73 Mo. 1. c. 50: "The proviso is clumsily constructed." Plaintiff relies upon this Holman case, the case of

Moore v. Wingate, 53 Mo. 398, and Johnson v. Quarles, 46 Mo. 423, as supporting his contention that this proviso excludes the testimony of Mrs. Hocker as to the conversation had in her presence. He also relies upon several cases from the Courts of Appeals, which cases cite the cases from this court, *supra*.

The broad language of the Holman and Moore cases was thus commented upon by this court in the more recent case of Lynn v. Hockaday, 162 Mo. l. c. 123:

"In Moore v. Wingate, 53 Mo. 398, l. c. 409, concerning the proviso now under discussion, it was said: 'This provision of the statute was intended to apply to all cases, whether the husband was a party to the action or not.' The language is broader there than necessary; it would have been sufficient if it said that the provision applied to the facts of that case. And perhaps all that was there intended was that it applied as well to a case in which her husband or his estate was interested as it did to a case in which he was a party. That it was not intended to construe the statute as imposing a new disqualification on a wife is shown by the words immediately following: 'It was intended to leave the disabilities of a married woman, in reference to these matters, just as they were at common law.'

"In Holman v. Bachus, 73 Mo. 49, a similar broad expression is found, but the same idea prevails through the opinion, that the statute only dealt with existing common-law disabilities. In that case the estate of deceased husband, though not sued, was interested. There is nothing in Willis v. Gammill, 67 Mo. 730; McFadin v. Catron, 120 Mo. 253, or Shanklin v. McCracken, 140 Mo. 356, to which we are referred, contrary to this view."

In the same case in discussing the force and effect of this proviso, this court further said: "But there was no objection made to her competency as a witness

on the ground that she was a party in interest to the contract alleged to have been made by the deceased, but it was only on the ground that she was the wife of deceased, and the argument in the brief of counsel is that she was disqualified by the terms of the proviso in section 8922, Revised Statutes 1889, now section 4656, Revised Statutes 1899. The section declares that no married woman shall be disqualified as a witness in a civil suit prosecuted in the name of or against her husband in certain cases, and specifies the cases, but this is not one of them. Then it adds: '*Provided,* that nothing in this section shall be construed to authorize or prevent any married woman, while the relation exists, or subsequently, to testify to any admission or conversations of her husband, whether made to herself or to third parties.' That proviso by its very terms is only a restriction of the right in that section conferred. The section enables a married woman to testify in certain kinds of cases in which by the common law she was disqualified, but having qualified her as a witness in those cases, it adds in effect, that in exercising the right there conferred she is not to speak of what her husband may have said to her or to any one else. It is, on the whole, an enabling and not a disabling statute. [Bates v. Forcht, 89 Mo. 121.] The restriction in the proviso is not on a capacity she had before, but only on the privilege there conferred. At common law, in a suit between strangers, in which neither the interest of herself nor that of her husband was affected, she was a competent witness to testify to a conversation between her husband and a third person. [1 Greenleaf Ev. (16 Ed.), secs. 341-2.] Such a case would not come within the purview of that statute.''

It thus appears that we have held that the purpose of this proviso was to restrict in the way mentioned in the proviso, the grants contained in the

224 Sup—42

previous provisions of the statute; that its purpose was not to take from the body of the common law, rights there given, but simply restrict the terms of the preceding portions of the statute. We are firmly of the opinion that the views in the Lynn case are correct. The purpose of a proviso is not to create new rights or make new law or to take away old rights existing under the law or to repeal a part of existing substantive law, but to restrict or restrain the preceding portion of the statute of which it forms a part. As has been often said this statute is an enabling statute and not a disabling statute. If plaintiff's contention is true, it is both, for the first part gives rights not possessed under the common law, and the proviso takes away rights previously possessed under the common law.

In addition to what VALLIANT, J., said in the Lynn case it might not be amiss to look elsewhere.

In the case of People ex rel. v. Kelly, 5 Abbott's New Cases, l. c. 405, the New York Court of Appeals adopts this definition of proviso, as taken from 66 N. Y. 395: "A proviso in a grant or enactment is something taken back from the power first declared. The grant or enactment is to read, not as if the larger power was ever given, but as if no more was ever given than is contained within the terms or bonds of the proviso."

As applied to an enactment or law, 6 Words and Phrases, p. 5755, thus speaks of the office of a proviso: "The office of a 'proviso' is to limit or restrict the general language preceding it, and not to enlarge the enacting clause. [Commonwealth v. Charity Hospital, 48 Atl. 906, 199 Pa. St. 119; Patterson v. Winn, 24 U. S. (11 Wheat.) 380, 387, 6 L. Ed. 500; Van Reipen v. Jersey City, 33 Atl. 740, 742, 58 N. J. L. 262; State ex rel. v. Browne, 57 N. W. 659, 660, 56 Minn. 269.]"

So too, says Black on Interpretation of Laws, page 271: "The office of a proviso is not to enlarge or extend the act or the section of which it is a part, but

rather to put a limitation or a restraint upon the language which the legislature has employed.''

In 32 Cyc., p. 743, the following outline of the purposes of a proviso to a law is given: ''A clause which generally contains a condition that a certain thing shall or shall not be done in order that something in another clause shall take effect; something engrafted upon a preceding enactment, generally introduced by the word 'provided;' something grafted upon a preceding enactment, and is legitimately used for the purpose of taking special cases out of the general enactments, and providing specially for them; something taken back from the power first declared.''

To a like effect is 2 Lewis's Sutherland's Statutory Construction, p. 674, whereat it is said: ''The proper function of a proviso being to limit the language of the legislature, it will not be deemed intended from doubtful words to enlarge or extend the act or the provision on which it is engrafted.'' And on the preceding page, the same author says: ''The natural and appropriate office of the proviso being to restrain or qualify some preceding matter, it should be confined to what precedes it, unless it clearly appears to have been intended to apply to some other matter. It is to be construed in connection with the section of which it forms a part, and it is substantially an exception. If it be a proviso to a particular section, it does not apply to others unless plainly intended. It should be construed with reference to the immediately preceding parts of the clause to which it is attached. In other words, the proviso will be so restricted in the absence of anything in its terms, or the subject it deals with, evincing an intention to give it a broader effect. It is not an arbitrary rule to be enforced at all events, but is based on the presumption that the meaning of the lawmaker is thereby reached.''

As stated by Judge HENRY, this proviso is not as clear as it might be, but there is nothing in it to indi-

cate a purpose upon the part of the legislature to branch out into the field of changing the prior existing substantive law. A fair and reasonable construction was given to it by VALLIANT, J., in the Lynn case, *supra*. The act itself, which in present form appeared first in 1874, grants to the wife the privilege of testifying for her husband in three classes of cases. And to the husband the right to testify for his wife in one class of cases. Prior to 1874, the husband was not included. The act itself then grants rights which were not enjoyed under the common law. It enables the husband and wife to testify where they couldn't testify before under the law.

It is more reasonable to say that the Legislature meant by this proviso to say to the wives, "We have given you the right to testify in certain cases, but in so doing you must not do the things mentioned in the proviso," than it would be to say to them that, "Whilst by the body of the act we have given you rights not possessed under the common law, yet by the proviso we have made some new substantive law, by taking from you other rights which you did possess at common law." The Lynn case properly defines the scope and meaning of the proviso involved in this suit. It is not the purpose of a mere proviso to add to the body of the substantive law, nor to take anything therefrom. Its purpose is to restrict, limit or explain the general terms of the act of which it forms a part. See 6 Words and Phrases, title, "Proviso."

So construing this proviso, and it appearing that at common law Mrs. Hocker was a competent witness in an action between strangers, it follows that her whole deposition was competent.

V. Appellant insists in the assignment of errors that the trial court erred in giving instruction numbered 2 for the plaintiff. This instruction declares that an oral agreement to sell the disputed property by

Harryman to Brummett is void. And further that no contract for the sale of real estate is valid unless in writing. The instruction is a little emphatic in its wording, but was perhaps well enough under the pleadings. A verbal contract to convey lands is not always void, but specific performance thereof may be enforced under conditions well known to the profession.

Upon the whole, this cause should be and is reversed and remanded.

*Valliant, J.,* concurs; *Woodson, J.,* concurs in result and in the opinion, except he expresses no opinion on the Holman and Wingate cases discussed in this opinion; *Lamm, P. J.,* does not sit.