THE STATE ex rel. BUCHANAN COUNTY v. JOHN F. IMEL and NATIONAL SECURITY COMPANY, Appellants.

Division Two, March 13, 1920.

1. **CONSTITUTIONAL QUESTION: Reexamination.** It is the duty and within the power of courts to correct their own errors in a subsequent appeal in the same case, or in another involving the same question; but unless it appears to the court that its previous ruling sustaining the validity of a statute is radically wrong, the same constitutional question is no longer open for consideration.

2. ———: **Compensation of Probate Judge: Increase.** The compensation of probate judges is within the purview of the constitutional inhibition against an increase in an officer's compensation during his term.

3. ———: ———: ———: **Statute: Effect of Proviso.** While the effect of the proviso added in 1895 to present Section 10695, relating to the compensation of probate judges, was to restrict the preceding portion of the section, it became upon its adoption as much a substantive and operative portion of the original section

as if incorporated therein when the latter was first enacted, and the consitutional inhibition against an increase in an officer's compensation during his term likewise applied to it.

4. ———: ———: **Paid by Fees: Inhibition Against Increase.** The constitutional inhibition against an increase in an officer's compensation during his term, is applicable to an office to which no salary is attached. The test of the application of the inhibition is not the manner in which the officer is paid, but2 the nature of his official tenure and the character of the duties performed for which the fees are charged.

5. ———: ———: **Fees in Excess of Designated Amount.** Nor is the inhibition less applicable because it does not apply until the fees collected exceed a designated amount, if the statute is general and includes within its provision a clearly defined class of officers.

6. **COMPENSATION OF PROBATE JUDGE: Equal to Circuit Judge's Salary.** The statute (Sec. 10695, R. S. 1909) declaring that whenever the amount of fees collected for any one calendar year by or for any probate judge in any county shall exceed "a sum equal to the annual compensation provided by law for a judge of the circuit court having jurisdiction in said county," the excess less ten per cent, shall be paid into the county treasury, by using the words "compensation provided by law for a judge of the circuit court" meant the circuit judge's salary for judicial services, and did not mean to include emoluments received by the circuit judge for other services, such as his services as jury commissioner.

7. **STATUTE: Interpretation: Context: Purpose.** Words in a statute take color and force from their setting, and in their application their context and the general puruose of incorporating them in the statute should be considered.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer,* Judge.

AFFIRMED.

*Vinton Pike, Charles F. Strop* and *George W. Eastin* for appellants; *Henry Lamm,* of counsel, *amicus curiae.*

(1) We ask the court to again consider the question of the validity of Section 10695. The decision must turn mainly on whether or not a judge of probate is a

state or county officer. It was held in Henderson v. Koenig, 168 Mo. 357, that he is a county officer, whose fees must be provided and regulated by a uniform law. Constitution, Art. 9, sec. 12. Section 10695, was upheld in the case in 242 Mo. 293, by a divided court, and followed in the same case on second appeal, and on the latter appeal the court was also divided. (2) The compensation of a circuit judge for the same year measures the compensation of the judge of probate. Not a stated salary of a circuit judge, but the sum total of all the emoluments he secures by virtue of his being a circuit judge, which constitute his compensation. Cunningham v. Current R., etc., 165 Mo. 270; State ex rel. v. Walker, 97 Mo. 164; S. L. Obispo v. Felts, 104 Cal. 66; 23 Cyc. 11, 526, 530.; Benford v. Gibson, 15 Ala. 571.; Throop on Pub. Off. (Ed. 1892), 466; Thompson v. Phillips, 12 Ohio St. 617; Milwaukee Co. v. Hochett, 21 Wis. 613; Kilgore v. People, 76 Ill. 552; Apple v. Crawford Co., 105 Pa. St. 303; 12 C. J. 251, note 46 C.; 29 Cyc. 1428; Hoyt v. United States, 10 How. 133; People ex rel. v. Wemple, 115 N. Y. 309; Throop on Pub. Off. sec. 462; State v. Cook, 37 Tex. 205; Bates v. St. Louis, 153 Mo. 18; State v. Amick, 247 Mo. 294; State v. McKay, 249 Mo. 261. (3) "Emoluments" or "compensation" embraces all receipts for official services, such as fees, per diem, allowances, and allowances to sheriffs for board of prisoners. 29 Cyc. 1428 and notes; Broader Than Salary. Kilgore v. People, 76 Ill. 552; Apple v. Crawford Co., 105 Pa. St. 242. The Legislature in using the word "compensation" intended to embrace all the terms implied in common use. 36 Cyc. 1106-7; Armstrong v. Modern Brotherhood of America, 132 Mo. App. 178. It means the income of the office. Scearcy v. Grow, 15 Colo. 123.

*Stephen K. Owen, Phil A. Slattery* and *Homer C. King* for respondent.

(1)    The court is again asked to consider the question of the constitutionality of Section 10695, and are asked to overrule and set aside the opinion in the former Imel case, 242 Mo. 293; but appellants advance no reason except that that decision was rendered by a divided court. Sec. 10695, R. S. 1909, is constitutional. State ex rel. v. Imel, 242 Mo. 293; Green County v. Lydy, 263 Mo. 77.   (2)    Appellant is estopped from raising. the question of the constitutionality of Section 10695.   Section 10695, under which the appellant collected the money in controversy, was in force when he accepted the office of probate judge of Buchanan Coun ty.   By voluntarily accepting that office and collecting the fees which the law prescribed for his services, he waived the right to assail the constitutionality of that law.   State ex rel. v. Imel, 242 Mo. 293; Greene County v. Lydy, 263 Mo. 77.   (3)    Appellant is not entitled to the fifteen hundred dollars, paid to a circuit judge as compensation as jury commissioner, under the Act of 1907, page 322, and the Act of 1911, page 305, for the reason that said Act of 1907 was not passed and was not in effect at the time appellant qualified and entered upon his duties as probate judge, for his first term, and when appellant entered upon his duties of probate judge in January, 1911, there were no jury commissioners in Buchanan County, and the Act of 1911 did not go into effect until March 15, 1911.   State ex rel. v. Ryan, 232 Mo. 77.   (4)    Appellant is not entitled to the increase in the annual compensation of the circuit judge of Buchanan county, as provided for in the Act of 1911, page 389, for the reason that before the passage and taking effect of said act he had previously qualified and entered upon his duties for a term of four years as judge of the probate court.

WALKER, C. J.—The appeal in this case arises out of a judgment rendered in the Circuit Court of Buchanan County against appellants and in favor of the respondent in a suit brought by the latter to recover certain fees alleged to have been retained by the appel-

lant Imel as probate judge of that county in excess of the amounts allowed him by law during the years of his official terms as stated in the petition. The questions submitted for review are: is Section 10695, Revised Statutes 1909, constitutional; and what was the annual compensation of a circuit judge of that county during the years in question?

I. This is the fourth time the constitutionality of Section 10695, Revised Statutes 1909, has been assailed in this court for the same reason and by the same parties. [State ex rel. Buchanan Co. v. Imel, 242 Mo. 293; State ex rel. Greene Co. v. Lydy, 242 Mo. 316; Greene Co. v. Lydy, 263 Mo. 77.] It will be recalled that this section defines the fees that may be charged by probate judges and the amount of same that may be retained by them each year of their services. The power and the duty of courts to correct their own errors in a subsequent appeal of the same case, or in another involving the same question, is not to be gainsaid. [Star Bot. Co. v. Expo. Co., 240 Mo. l. c. 643; Bowles v. Troll, 262 Mo. 377; Mangold v. Bacon, 237 Mo. l. c. 536; Underwood v. Railroad, 177 S. W. 724.] Only in the exercise of this power is opportunity afforded for the correction of judicial errors, which, despite painstaking care and patient research will, on account of the fallibility of the human mind, sometimes occur. Where, as here, however, counsel for appellants insistently reiterate a single ground of invalidity, which, after repeated presentations, has failed to convincingly impress the court, the time-worn maxim embedded in the law since the time of Littleton, that "it is the concern of the public that there should be an end of litigation," may be appropriately applied. A careful survey of the present contention as to the invalidity of the statute adds no reason not heretofore submitted. What we held good in the beginning may therefore be held good in the end, for appellants' contention can derive no strength from iteration in the absence of reason. The general rule to which we gave

*Constitutional Question.*

concrete application in Greene Co. v. Lydy, 263 Mo. 77, 172 S. W. 376, 1917C, Ann. Cas. 274, is applicable, that a constitutional question once decided is no longer open for consideration unless it appears to the court that its opinion is radically wrong. Furthermore, it never having been made to appear that this statute was clearly wrong or that there existed even grave doubts as to its validity, we decline to further discuss this question. Thus concluding, we have not deemed it necessary to advert to the doctrine of estoppel as equally applicable in the instant case as in Greene Co. v. Lydy, supra, where it was learnedly applied by Chief Justice LAMM,

In addition to the authorized publication of the Lydy case, the curious will find Justice LAMM's conclusion therein approved by many authorities compiled by the able editors of Am. & Eng. Annotated Cases, in the reprint of that case in 1917C, Ann. Cas. p. 284.

II. We come now to appellants' second contention. Under the statute (Sec. 10695) the annual compensation of the judge of the circuit court in the county where the appellant Imel exercised the functions of probate judge, measures the maximum amount the latter may retain as his annual compensation out of fees collected by him during each calendar year of his term. The vexing question necessitating a construction of the statute is what is meant by the annual compensation of the judge of the circuit court. The answer thereto will enable it to be determined which of the diverse contentions of the parties is correct. Appellants contend that all emoluments received by a circuit judge during each year from whatever source, if authorized by law, are within the meaning of the statute. Respondent contends that a circuit judge's salary for judicial services should fix the limit of appellant's compensation.

The portions of Section 10695 pertinent to the determination of the matter at issue are in effect as follows: After providing generally that probate judges shall be allowed fees for their services as there enumer-

ated except certain fees not authorized to be charged, it is further provided ''that whenever, after deducting all reasonable and necessary expenses for clerk hire, the amount of fees collected in any one calendar year by or for any one probate judge in any county in this State, during his term of office, and irrespective of the date of accrual of such fees, shall exceed a sum equal to the annual compensation provided by law for a judge of the circuit court having jurisdiction in such county, then it shall be the duty of such probate judge to pay such excess less ten per cent thereof, within thirty days after the expiration of such year, into the treasury of the county in which such probate judge holds office, for the benefit of the school fund of such county.''

As preliminary to the discussion of the main question it is well to ascertain if the compensation of probate judges is within the purview of the constitutional inhibition against an increase in an officer's compensation during his term. If so, the rules of interpretation of other statutes of like import may with propriety be applied to assist, so far as may be, in the solution of the main question. Before the incorporation in Section 10695 of the proviso quoted above, the inhibition only constituted a limitation upon the amount of each fee authorized to be charged. Thereafter, upon the amendment of the section in 1895 (Laws 1895, p. 155), which included the proviso, the inhibition applied not to the particular fees, but to the total amount of annual compensation probate judges were entitled to retain for their services.

While the effect of the proviso, under the general rule (Brown v. Patterson, 224 Mo. 639), was to restrict the preceding portion of the section, it became upon its adoption as much a substantive and operative portion of the original section as if incorporated therein when the latter was first enacted. The restriction simply changed the manner in which the limitation as to fees was to be determined, and fixed a basis by which the

constitutional inhibition could be definitely ascertained and uniformly applied.

In addition to what we have said elsewhere as to the purpose of this constitutional inhibition (Folk v. St. Louis, 250 Mo. l. c. 134; State ex rel. Attorney General v. McGovney, 92 Mo. 428; State ex rel. v. Ranson, 73 Mo. 89) not relevant here, it is evident that it was intended to serve an additional and not unimportant purpose, viz., to so limit official salaries or fees as to enable the Legislature to provide for a system of annual compensation, uniform in amount for the same class of public officers throughout the State. As the law existed prior to 1895 this purpose was defeated so far as it pertained to the fixing of the amount of the annual compensation of probate judges. In the enactment of the amendment in that year, however, this class of officials was subjected to a like rule for the determination of their compensation as provided in statutes in regard to the limit of the compensation of other public officials.

The speciously plausible argument is made that the constitutional limitation is not applicable, because no salary is attached to the office of a probate judge and he is not compensated out of public funds regardless of the services performed. The test of the application of the inhibition is not to be determined by the manner in which an official is paid, but by the nature of his official tenure and the character of the duty he performs for which the fees are charged. If his tenure is definitely fixed by law (State ex rel. v. Gordon, 238 Mo. 168) and this duty is public in its nature and affects all citizens alike who come within the purview of the statute enjoining it, the official who performs the duty is a public officer and within the constitutional inhibition regardless of the manner in which he is compensated. Probate judges hold for prescribed terms, they perform duties enjoined by a statute which the Legislature in its wisdom has deemed necessary to the orderly conduct of affairs of the State, by providing a general method for the settlement of the estates of deceased and other per-

36—280 Mo.

sons. This statute is public in its nature, uniform in its application and the duties it enjoins are but a part of the machinery the State has adopted for the protection and distribution of the property of its citizens. Possessing these characteristics, little room is left for cogent reasoning against the conclusion that the compensation of this class of officials cannot be exempted from the constitutional inhibition; nor is there such indefiniteness or uncertainty in the statute as to exempt the compensation of a probate judge therefrom.

It does not militate against the correctness of this conclusion that the inhibition does not apply until the fees collected as stated exceed the amount designated. No constitutional provision is violated in thus fixing the limit. The statute, being general, includes within its provisions a clearly defined class; it is in accord with public policy in prescribing a method by which the inhibition of the Constitution may become more uniformly applicable, and it in no wise interferes with the rights of individuals.

The constitutional restriction having been found to be applicable, when the meaning of that portion of the statute in relation to the compensation of a circuit judge has been determined, little difficulty will be encountered in ascertaining the maximum amount of annual compensation to which a probate judge is entitled.

III. In construing that portion of the statute which by reference fixes the limit of the annual compensation authorized to be retained by a probate judge, we are

Compensation. not restricted to the meaning, however general, of the word "compensation" when standing alone. Words, like things instinct with life, take color and force from their environment. An attempt, therefore, to construe the word free from its setting in the phrase or sentence in which it appears or independent of the other words with which it is used would deprive the inquirer of one of the well recognized aids to interpretation and as a consequence lead

to a lame conclusion as to the meaning of this portion of the statute.

To avoid this, it is necessary to ascertain the meaning and as a consequence the application of the connected words used in the statute, to-wit: "the annual compensation provided by law for a judge of the circuit court having jurisdiction in the county" for which the probate judge was elected. The general purpose of the incorporation of these words in the section, as we have indicated in the discussion of another phase of this case, was to establish a uniform maximum limit for the annual compensation of probate judges. That another and a different reason prompted legislative action is not reasonably inferable, either from the words themselves, or from their context, or the entire subject-matter of the section. To effect the legislative will, therefore, it was necessary either to designate a uniform salary for all officials of this class and provide for their payment directly out of the public treasury irrespective of services rendered; or to continue the fee system of remuneration then in force, but fix a definite limit which would provide ample compensation for all official services rendered by probate judges during each year, and require the excess above that limit to be paid into the county treasury. The Legislature adopted the latter system. In addition to its bringing the annual compensation of probate judges clearly within the purview of the Constitution (Sec. 8, Art. XIV) it apportions the burden of the payment of the compensation of this class of officers among the people of the respective counties for whom the services are rendered; and, after these officials have been paid, the maximum amount the law prescribes as a fair compensation for each year's service, the excess is to be paid into the county treasury for the benefit of the school fund. Salutary features aside, however, as tending only to exemplify legislative wisdom, we address ourselves to the primary purpose of the statute as determinative in its last analysis of the matter at issue.

Where a portion of a statute refers to another to define its meaning, the portion referred to must by its terms indicate the propriety of the reference or admit of such a construction as will remove any doubt in regard thereto. The purpose of the statute (Section 10695) being, as we have shown, to fix a uniform limit for the annual compensation of probate judges, the reference therein to "the annual compensation provided by law for circuit judges" as furnishing a basis for the determination of such limit would fail of its purpose unless the compensation thus referred to was intended to have a well-defined meaning, uniform in its operation upon the compensation of circuit judges having jurisdiction in counties wherein the official functions of probate judges are exercised. In short, the compensation of circuit judges referred to is that authorized to be paid to them for their judicial services in the class of counties where such services are rendered. If the compensation referred to was not intended to be thus limited then the reference would furnish no definite basis from which the compensation of the probate judges could be determined and the purpose of the statute would be defeated. The very language of the statute is indicative of this meaning. The reference, it will be noted, is not to the compensation of circuit judges generally, but to that "provided by law for them." Other compensation authorized to be paid to this class of officials is for added duties in no sense judicial, the performance of which has been imposed upon them arbitrarily by the Legislature, more as a matter of convenience than for any other apparent reason. The statutes (Laws 1905, p. 174, and 1907, p. 322) designating certain circuit judges as jury commissioners afford illustrations of this character of legislation. In construing them in State ex rel. Harvey v. Sheehan, 269 Mo. l. c. 429, we held that the remuneration therein provided for constituted no part of the judge's compensation for judicial services. It must be conceded that the Sheehan, and other cases of like import, do not announce a rule of construction expressly

determinative of the matter at issue. But they do offer by analogy a strong persuasive reason in support of the conclusion we have reached herein. In the cases cited the matter directly in issue was the limit of the compensation of circuit judges; in the instant case that matter is involved only by reference and the language of that reference is more clearly indicative of a purpose to limit the compensation of circuit judges to judicial services than in the cases cited.

It having been determined that the constitutional restriction is applicable to the compensation of probate judges and that the latter is limited to the annual compensation of circuit judges for judicial services, the amount the appellant Imel is authorized to retain in the instant case becomes a mere matter of computation. In the ascertainment of the amount, the course pursued by the trial court was in harmony with the rules of construction indicated herein and there being, as we view the facts, substantial evidence to sustain the conclusion reached, the judgment is affirmed. All concur.